Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL X

| | | |
|---|---|---|
| MARIANITA SOLIVÁN TORRES<br><br>Apelado<br><br><br>V.<br><br><br>COOPERATIVA DE SEGUROS DE VIDA DE PUERTO RICO<br><br>Apelante | KLAN202300804 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2021CV02145<br><br>Sobre: Incumplimiento de Contrato de Póliza de Seguro de Vida, Daños y Perjuicios |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 11 de enero de 2024.

El 11 de septiembre de 2023, compareció ante este Tribunal de Apelaciones, la Cooperativa de Seguros de Vida de Puerto Rico (en adelante, parte apelante o COSVI), por medio de *Apelación.* Mediante esta nos solicita que, revisemos la *Sentencia Parcial* emitida el 24 de abril de 2023, y notificada el 25 de abril de 2023, por el Tribunal de Primera Instancia Sala Superior de San Juan. En virtud del aludido dictamen, el foro *a quo* declaró Ha Lugar la *Moción en Solicitud de Sentencia Sumaria Parcial e Imposición de Honorarios de Abogado por Temeridad,* presentada por la señora Marianita Solivan Torres (en adelante, parte apelada o señora Solivan Torres), y declaró No Ha Lugar la *Oposición a Solicitud de Sentencia Sumaria y Solicitud de Desestimación bajo la Regla 10.2 de las de Procedimiento Civil,* presentada por COSVI.

Número Identificador

SEN2024 _____

Por los fundamentos que adelante se esbozan, se confirma el dictamen apelado.

**I**

Los hechos que propiciaron el recurso de epígrafe, se remontan a una *Demanda* sobre incumplimiento de contrato de póliza de seguro de vida, y daños y perjuicios, presentada por la señora Solivan Torres, en contra de COSVI. Según se desprende de la *Demanda*, para el 2 de junio de 2004, la parte apelante emitió la póliza de seguro de vida individual número 3403135 a un término de treinta años, donde, la dueña y asegurada de esta lo era la hija de la parte apelada, la señora Marie Santiago Solivan (en adelante, señora Santiago Solivan). En la aludida póliza, la señora Santiago Solivan designó como beneficiario a su esposo, el señor William Davis Rodríguez (en adelante, señor Davis Rodríguez), y como beneficiarios contingentes al señor William P. Davis y a la señora Gladys Rodríguez, y se reservó el derecho de cambiar tales designaciones. La parte apelada sostuvo que, el 7 de enero de 2016, la señora Santiago Solivan compareció a las oficinas de COSVI con el propósito de solicitar un servicio sobre cambios de beneficiarios y de dirección postal. Arguyó que, en dicho cambio de beneficiarios, la señora Santiago Solivan nombró a su hijo William Joseph Davis Santiago (menor de edad en ese entonces), a la señora Solivan Torres, y como beneficiaria contingente a su hermana, la señora Lisandra Santiago. Posteriormente, para el 12 de noviembre de 2020, la señora Santiago Solivan falleció, mientras se encontraba vigente la póliza de seguro de vida número 3403135. La parte apelada adujo que, al cumplir con acreditar el fallecimiento de la señora Santiago Solivan, había originado por derecho propio una reclamación contra COSVI para el pago de importe correspondiente que le asistía, por la suma de cincuenta mil dólares ($50,000.00), en carácter de beneficiaria designada en la póliza de seguro de vida

número 3403135. Alegó que, mediante una carta con fecha del 5 de febrero de 2021, se le informó a la señora Solivan Torres que no procedía el pago a su favor de los beneficios cubiertos en la póliza. Lo anterior, debido a que, el 28 de diciembre de 2020, tales beneficios fueron pagados al "beneficiario designado" en la póliza, el señor Davis Rodríguez. A estos efectos, sostuvo que, la negativa de COSVI constituía un incumplimiento de contrato, y por ello, entre otras cosas, le solicitó al foro primario que le ordenara el pago de la póliza.

En respuesta, COSVI presentó la *Contestación a Demanda*. Por medio de esta, alegó que, el solicitante del seguro de vida individual fue el señor Davis Rodríguez y que, conforme a la política de COSVI, era el dueño de la póliza. Aseguró que, como consecuencia de lo anterior, la señora Santiago Solivan no estaba autorizada a realizar cambios de beneficiarios. Finalmente, adujo que, COSVI había actuado conforme a sus políticas y las cláusulas de la póliza número 3403135, de modo que, entendía que la alegación de incumplimiento de contrato era inmeritoria.

Posteriormente, la parte apelada presentó la *Demanda Enmendada*. De las alegaciones de esta surge que, luego de la fecha de efectividad de la póliza de seguro individual número 3403135, COSVI le envió un duplicado de la misma a la señora Santiago Solivan. De la página de cubierta de dicha póliza, surgía que, esta fue registrada a nombre de la señora Santiago Solivan. Arguyó que, la copia de la póliza contenía una tabla de información donde se reflejaba a la señora Santiago Solivan como asegurada y dueña de la póliza. La *Demanda Enmendada* reiteraba el trámite reseñado en la *Demanda*, respecto al cambio de beneficiarios en la póliza número 3403135. Indicó, además que, en ningún momento COSVI le remitió comunicación escrita donde le informara que el cambio de beneficiarios solicitado le hubiese sido denegado. Al contrario, la

parte apelante, el 23 de diciembre de 2020 le remitió una misiva suscrita por el señor Abdel Meléndez, Supervisor del Departamento de Selección y Emisión, donde le notificó a la señora Santiago Solivan que, el "cambio de beneficiarios solicitado en su póliza fue realizado". Alegó incumplimiento de contrato por parte de COSVI, al no honrar el pago a los beneficiarios designados.

Por su parte, COSVI negó lo alegado por la parte apelada en su *Contestación a Demanda Enmendada*. Acotó que, a pesar de que la Hoja de Información reflejaba y confirmaba el cambio de beneficiarios, como cuestión de derecho de seguros, el dueño de la póliza es quien adquiere la póliza y quien paga la prima. Conforme a ello, alegó afirmativamente que, la señora Santiago Solivan no tenía derecho a realizar un cambio de beneficiarios, y que, cualquier cambio de beneficiarios hecho a solicitud de esta era nulo e inválido.

Subsiguientemente, COSVI presentó la *Contestación Enmendada a Demanda Enmendada*, donde, entre otras cosas, expresó que, lo indicado en la Tabla de Información Básica era un error, ya que, el dueño de la póliza es la persona o entidad que firma como solicitante, y quien en este caso, era el señor Davis Rodríguez. Alegó, además que, no hubo un cambio de beneficiarios, sino, una solicitud de información y que por eso, se había originado la carta enviada a la señora Santiago Solivan.

Luego de varios incidentes procesales innecesarios pormenorizar, el 31 de mayo de 2022, la parte apelada presentó la *Moción en Solicitud de Sentencia Sumaria Parcial e Imposición de Honorarios de Abogado por Temeridad*. Mediante esta, propuso cincuenta y nueve hechos que, a su juicio, no estaban en controversia. Asimismo, alegó que, procedía que se dictara sentencia sumaria debido a que, la señora Santiago Solivan se consideraba dueña y asegurada de la póliza. Lo anterior, debido a que las primas mensuales de la póliza eran pagadas con fondos

pertenecientes a la sociedad legal de gananciales que estaba constituida con el señor Davis Rodríguez. Además, por las siguientes razones: porque la señora Santiago Solivan aparecía nombrada como dueña en el contrato redactado por COSVI; porque la señora Santiago Solivan había realizado el cambio de beneficiarios con la anuencia de COSVI, sin que esta última le hubiese notificado en ningún momento que no tenía derecho a realizar el cambio y por último, debido a que COSVI realizó el aludido cambio solicitado por la señora Santiago Solivan y fue acreditado mediante una carta firmada por el supervisor del Departamento de Emisión Individual.

Así las cosas, COSVI presentó la *Oposición a Solicitud de Sentencia Sumaria y Solicitud de Desestimación bajo la Regla 10.2 de las de Procedimiento Civil*. Adujo que, había cumplido con el pago de los beneficios de la póliza como correspondía en derecho al señor Davis Rodríguez. De igual manera, acotó que, nunca recibió una solicitud de cambio de beneficiario del dueño o titular de la póliza, y que como consecuencia, cualquier solicitud de cambio de beneficiarios realizada por la señora Santiago Solivan era ilegal. Finalmente, solicitó al foro *a quo* que denegara la solicitud de sentencia sumaria presentada por la parte apelada y que desestimara la demanda con perjuicio.

Por otro lado, la parte apelada presentó la *Réplica a "Oposición a Solicitud de Sentencia Sumaria y Solicitud de Desestimación bajo la Regla 10.2 de las de Procedimiento Civil"*. Acotó que, la oposición presentada por la parte apelante no cumplía con los criterios establecidos por la Regla 36 de Procedimiento Civil. Reiteró que, COSVI había demostrado temeridad, al no asumir responsabilidad y al haberle pagado al señor Davis Rodríguez el importe total de la cubierta de la póliza. Sostuvo que, COSVI incurrió en múltiples prácticas que demostraron temeridad.

Finalmente, la primera instancia judicial emitió la *Sentencia Parcial* cuya revisión nos atiene. En virtud de esta, declaró Ha Lugar la *Moción en Solicitud de Sentencia Sumaria Parcial e Imposición de Honorarios de Abogado por Temeridad* presentada por la parte apelada. De igual manera, dispuso las siguientes determinaciones de hechos:

1. La señora Marianita Solivan Torres es mayor de edad, soltera y vecina de Bayamón, Puerto Rico.

2. COSVI es una cooperativa de seguros organizada al tenor del Capítulo 34 del Código de Seguros de Puerto Rico.

3. La Sra. Santiago y el Sr. Davis contrajeron matrimonio entre sí el 26 de agosto de 1992 en Bayamón, Puerto Rico.

4. La Sra. Santiago y el Sr. Davis constituyeron su matrimonio bajo el régimen económico de sociedad legal de gananciales.

5. Durante su matrimonio, la Sra. Santiago y el Sr. Davis rindieron "Planillas de Contribución Sobre Ingresos de Individuos" ante el Departamento de Hacienda de Puerto Rico de forma conjunta como casados, bajo la categoría "estado personal al finalizar el año contributivo".

6. Durante su matrimonio, la Sra. Santiago y el Sr. Davis procrearon un hijo, de nombre William Joseph Davis Santiago, nacido el 24 de septiembre de 1998.

7. El 2 de junio de 2004, la Sra. Santiago y el Sr. Davis presentaron ante COSVI la solicitud de seguro de vida individual número 107778, a término de treinta (30) años, siendo cien mil dólares ($100,000.00) la cantidad asegurada.

8. El interés objeto de asegurabilidad en la solicitud de seguro de vida individual, número 107778, era la vida de la Sra. Santiago.

9. En la solicitud de seguro de vida individual número 107778, la Sra. Santiago y el Sr. Davis informaron una sola dirección postal suya para el envío de avisos a ellos por COSVI: P.O. Box *675,* Bayamón, PR 00960.

10. Según se informó en la solicitud de seguro de vida individual, número 107778, para el 2 de junio de 2004, la Sra. Santiago se desempeñaba como secretaria del Sr. Davis en la oficina que, ejerciendo como quiropráctico, este operaba.

11. En la solicitud de seguro de vida individual, número 107778, la Sra. Santiago designó como beneficiario al Sr. Davis; y, como beneficiarios contingentes, a los progenitores de este, el Sr. William P. Davis y la Sra. Gladys Rodríguez.

12. En la solicitud de seguro de vida individual número 107778, se hizo reserva de derecho para el cambio de beneficiarios.

13. Con anterioridad al espacio disponible para las firmas de la Sra. Santiago y el Sr. Davis, el formulario de solicitud de seguro de vida individual, número 107778 provisto por COSVI, no incluyó en algunas de sus partes para identificar clara y explícitamente por nombre y apellidos a la persona que se consideraría como "solicitante" de la póliza.

14. Con anterioridad al espacio disponible para las firmas de la Sra. Santiago y el Sr. Davis, el formulario de solicitud de seguro de vida individual, número 107778, provisto por COSVI no incluyó una definición explicativa del término "solicitante" de la póliza, así como tampoco en cuanto a si tal "solicitante" podía ser persona distinta de la propuesta asegurada y las consecuencias legales que ello conllevaba de ser tal cosa posible.

15. Con anterioridad al espacio disponible para las firmas de la Sra. Santiago y el Sr. Davis, en el formulario de solicitud de seguro de vida individual número 107778 provisto por COSVI, se hizo constar en negrillas que "[s]olo un oficial autorizado tiene autoridad para contratar o alterar un contrato de seguro o para comprometer a la Cooperativa de Seguros Múltiples de Puerto Rico en forma alguna".

16. La Sra. Santiago firmó el formulario de solicitud de seguro de vida individual número 107778 provisto por COSVI, en el espacio titulado "Firma del propuesto asegurado principal".

17. El Sr. Davis firmó el formulario de solicitud de seguro de vida individual número 107778 provisto por COSVI, en el espacio titulado "Firma del solicitante si no es el propuesto asegurado".

18. Con posterioridad al espacio disponible para las firmas de la Sra. Santiago y el Sr. Davis, en el formulario de solicitud de seguro de vida individual número 107778 provisto por COSVI, fue que se hizo constar en negrillas que "[c]uando el solicitante no sea el propuesto Asegurado, dicho solicitante será el dueño de la póliza".

19. Con anterioridad al espacio disponible para las firmas de la Sra. Santiago y el Sr. Davis, el formulario de solicitud de seguro de vida individual número 107778 provisto por COSVI, no incluyó en algunas de sus partes para identificar clara y explícitamente, por nombre y apellidos, a la persona que se consideraría como "dueño" de la póliza.

20. Con anterioridad al espacio disponible para las firmas de la Sra. Santiago y el Sr. Davis, el formulario de solicitud de seguro de vida individual número 107778 provisto por COSVI, no incluyó una definición explicativa del término "dueño" de la póliza, así como tampoco en cuanto a si tal "dueño" podía ser una persona distinta de la propuesta asegurada y las consecuencias legales que ello conllevaba, de ser posible.

21. Luego de la fecha de efectividad de la póliza de seguro de [vida] individual a término #3403135, a solicitud de la Sra. Santiago, COSVI le envió un duplicado de esta, acompañada de una carta.

22. La carta y duplicado de la póliza de seguro de [vida] individual a término #3403135 que COSVI envió a la Sra. Santiago, según solicitado por ella, consiste de veintiséis (26) páginas.

23. COSVI envió a la Sra. Santiago la carta y duplicado de la póliza de seguro de [vida] individual a término #3403135 a la dirección postal P.O. Box 675, Bayamón, PR 00960-0675.

24. La cubierta de la póliza de seguro de [vida] individual a término #3403135 aparece registrada a nombre de la Sra. Santiago.

25. La póliza de seguro de [vida] individual a término #3403135 contiene un índice indicativo de que en la página tres (3) aparece una tabla de información básica de la misma.

26. Según la tabla de información básica de la póliza de seguro de [vida] individual a término #3403135, la cantidad asegurada por COSVI fue cien mil dólares ($100,000.00).

27. Según la tabla de información básica de la póliza de seguro de [vida] individual a término #3403135, aparece la Sra. Santiago como asegurada de la póliza.

28. Según la tabla de información básica de la póliza de seguro de [vida] individual a término #3403135 aparece la Sra. Santiago como dueña de la póliza.

29. El Sr. Davis no aparece nombrado en página alguna de la póliza de seguro de [vida] individual a

término #3403135, incluyendo su portada y la tabla de información básica de la misma.

30. En el historial de pagos mensuales de primas de seguro realizados a COSVI, relacionados a la póliza de seguro de [vida] individual a término #3403135, aparece identificada la Sra. Santiago como "pagador".

31. Dada su entonces condición delicada de salud, el 5 de enero de 2016, la Sra. Santiago suscribió bajo juramento ante notario público una "Declaración Previa de Voluntad (Directrices Adelantadas) y Nombramiento de Mandatario(a)" en la que designó como tal a su hermana Lisandra Santiago y, como mandataria alterna, a su madre, la Sra. Solivan.

32. Con respecto a la póliza de seguro de [vida] individual a término #3403135, el 7 de enero de 2016, la Sra. Santiago compareció personalmente, acompañada por Lisandra Santiago, a la Oficina Central de COSVI, [D]epartamento de Servicios al Cliente, a fin de solicitar un servicio sobre cambios de beneficiarios y de dirección postal en la misma, según se detalla a continuación:

    a. Cambio de beneficiarios añadiendo a Solivan Torres y William Joseph Davis Santiago como primarios; y, como beneficiaria contingente, a Lisandra. Esto, a su vez, eliminados a "todos los anteriores" beneficiarios; y

    b. Cambio de dirección postal a P.O. Box 3428, Guaynabo, PR 00970.

33. Conforme al procedimiento establecido por el [D]epartamento de Servicios al Cliente de COSVI, para el 7 de enero de 2016, una solicitud de cambios a la póliza no podía ser tramitada sin que antes un representante de dicho departamento corroborase quién era el dueño de la póliza, pues solo esa persona estaría autorizada para realizar cambios a la misma.

34. Conforme al procedimiento establecido por COSVI para el 7 de enero de 2016, su [D]epartamento de Servicios al Cliente tenía facultad para aprobar cambios de dirección postal a una póliza solamente si tal solicitud era realizada por el dueño de esta.

35. El 7 de enero de 2016, la representante del Departamento de Servicios al Cliente de COSVI que atendió personalmente a la Sra. Santiago con relación a su solicitud de cambios de dirección postal y beneficiarios en la póliza corroboró, antes de proceder con tal solicitud, que ella aparecía registrada como dueña de esta.

36. La corroboración de que la Sra. Santiago era la dueña de la póliza, que realizó la representante del

Departamento de Servicios al Cliente de COSVI el 7 de enero de 2016, consistió en que, al atenderla inicialmente, le preguntó en qué la podía ayudar, a lo cual la Sra. Santiago le informó su deseo de hacer cambios de dirección y beneficiarios en la póliza. Seguido de ello, la empleada procedió a identificar a la Sra. Santiago solicitándole un documento de identidad con foto, el cual proveyó. Luego, la empleada revisó la póliza y le comentó que podía hacer cambios de beneficiarios porque así se hizo constar en la solicitud de la póliza y que, como ella aparecía registrada como dueña de esta, podía solicitar los cambios que deseaba realizar.

37. El 7 de enero de 2016, luego de que la representante del [D]epartamento de Servicios al Cliente de COSVI corroboró que la Sra. Santiago aparecía registrada como dueña de la póliza, le facilitó un formulario oficial para formalizar su solicitud de cambios de dirección postal y beneficiarios en la misma.

38. El 7 de enero de 2016, luego de la Sra. Santiago entregar la solicitud de cambios de dirección postal y beneficiarios debidamente completada y firmada a la representante del [D]epartamento de Servicios al Cliente de COSVI, le fue entregada copia de la misma, así como de una "Hoja de Servicio" acreditativa del trámite que allí completó en esa fecha.

39. Con relación a la póliza de seguro de [vida] individual a término #3403135, no existe comunicación escrita alguna expedida por COSVI a la Sra. Santiago, acreditativa de que le informó que el cambio de dirección postal a P.O. Box 3428, Guaynabo, PR 00970, solicitado por ella personalmente en sus oficinas el 7 de enero de 2016, le fuese denegado.

40. Con relación a la póliza de seguro de [vida] individual a término #3403135, la solicitud de servicio realizada personalmente el 7 de enero de 2016 en las oficinas de COSVI por [l]a Sra. Santiago a los fines del cambio de dirección postal a P.O. Box 3428, Guaynabo, PR 00970, le fue aprobada en esa misma fecha.

41. Con relación a la póliza de seguro de [vida] individual a término #3403135, con posterioridad al 7 de enero de 2016, COSVI, en efecto, envió correspondencia a la Sra. Santiago, a la nueva dirección postal solicitada por ella: P.O. Box 3428, Guaynabo, PR 00970.

42. Conforme al procedimiento establecido por COSVI al 7 de enero de 2016, una solicitud de cambio de beneficiarios a una póliza tenía que ser referida al [D]epartamento de Emisión Individual para evaluación de esta y, una vez recibida por dicho [D]epartamento, era su responsabilidad validar si

la persona que la solicitó era la dueña de la póliza. De ser la dueña de la póliza, se realiza el cambio solicitado y, de no serlo, se rechaza la solicitud. Para ambos casos se envía una carta informando la determinación.

43. Con relación a la póliza de seguro [de vida] individual a término #3403135, COSVI no expidió comunicación alguna a la Sra. Santiago, que informara que la comunicación escrita alguna expedida por COSVI a la Sra. Santiago, acreditativa solicitud de cambio de beneficiario fuese denegada.

44. Para el 23 de diciembre de 2020, el Sr. Abdel Meléndez ocupaba el puesto de *Supervisor* del Departamento de Selección y Emisión Individual de COSVI.

45. Con relación a la póliza de seguro de [vida] individual a término #3403135, mediante carta fechada 23 de diciembre de 2020, suscrita por el Sr. Abdel Meléndez, *Supervisor* del Departamento de Selección y Emisión Individual de COSVI, se notificó a la Sra. Santiago, a su nueva dirección postal (P.O. Box 3428, Guaynabo, PR 00970), que "[e]l cambio de beneficiarios solicitado en su póliza fue realizado. Favor de incorporar este documento al contrato de su póliza, para facilitar el proceso en caso de reclamación".

46. Con relación a la póliza de seguro de [vida] individual a término #3403135, en la carta fechada 23 de diciembre de 2020 suscrita por el Sr. Abdel Meléndez, *Supervisor* del Departamento de Selección y Emisión Individual de COSVI, aparecen los nombres y apellidos de los beneficiarios originalmente nombrados con un cero por ciento (0.00%).

47. Como *Supervisor* del Departamento de Selección y Emisión Individual de COSVI, el Sr. Abdel Meléndez es un oficial autorizado con autoridad para contratar o alterar un contrato de seguro o para comprometer a COSVI.

48. En su contestación al "Primer Requerimiento de Admisiones" del presente caso, personal de COSVI afirmó bajo juramento que "la solicitud de enmienda completada por la Sra. Santiago nunca llegó al Departamento de Selección y Emisión" y que "por tal razón, esa solicitud nunca se trabajó y por ende no fue aprobada".

49. La Sra. Santiago falleció el 12 de noviembre de 2020 en San Juan, Puerto Rico, estando legalmente casada con el Sr. Davis.

50. El 16 de diciembre de 2020, el Sr. Davis presentó electrónicamente ante COSVI una solicitud de beneficios por la muerte de la Sra. Santiago,

relacionada a la póliza de seguro de [vida] individual a término #3403135.

51. En respuesta a la "Solicitud de Beneficios Seguro Individual e Hipotecario" por muerte de la Sra. Santiago, el 28 de diciembre de 2020, COSVI emitió a favor del Sr. Davis el cheque número 192931, por la suma de cien mil dólares ($100,000.00) por concepto de pago de beneficio relacionado a la póliza de seguro de [vida] individual a término #3403135.

52. El 28 de enero de 2021, la Sra. Solivan, acompañada por Lisandra, presentó personalmente ante COSVI una solicitud de beneficios por muerte de la Sra. Santiago, relacionada a la póliza de seguro de [vida] individual a término #3403135.

53. Mediante carta fechada *5* de febrero de 2021, firmada electrónicamente por la señora Graciela N. Arce Hernández, *Analista de Reclamaciones* de COSVI, se le informó a la Sra. Solivan que no procedía el pago a su favor de los beneficios por muerte mencionados en la póliza de seguro de [vida] individual a término #3403135, porque tal pago había sido realizado "al beneficiario designado por la señora Marie la Sra. [sic] Santiago".

54. El 3 de marzo de 2021, la Sra. Solivan contrató al Lcdo. Rafael A. Rivera Rivera para que le representara legalmente con relación a la reclamación de beneficio por muerte relacionado a póliza de vida que le fue denegada por COSVI.

55. Los honorarios de abogado pactados por la Sra. Solivan con el Lcdo. Rafael A. Rivera Rivera fueron establecidos sobre una base de contingencia de un veinticinco por ciento (25%) extrajudicialmente o un treinta y tres por ciento (33%) judicialmente, de cualquier oferta y/o compensación que se obtuviera de la aseguradora COSVI.

56. El 9 de marzo de 2021, la Sra. Solivan, por conducto de su abogado, Lcdo. Rafael A. Rivera Rivera, notificó electrónicamente a la señora Miriel Bermúdez, *Supervisora* del Departamento de Servicios al Cliente y Reclamaciones de COSVI, una carta en solicitud de reconsideración a la determinación de denegarle su reclamación de beneficios por muerte.

57. Mediante carta fechada 31 de marzo de 2021, sin la firma de ejecutivo(a) alguno(a) COSVI, por conducto de su [D]epartamento de Operaciones de Seguros, Selección y Emisión Individual, se denegó la solicitud de reconsideración de la Sra. Solivan.

58. Durante la vigencia la póliza de seguro de [vida] individual a término #3403135, la única solicitud de cambio de beneficiarios fue la realizada por la

> Sra. Santiago el 7 de enero de 2016. El Sr. Davis nunca solicitó cambio de beneficiarios.

De igual forma, determinó que, los actos llevados a cabo por COSVI, tuvieron el efecto de convalidar el cambio de beneficiarios realizado por la señora Santiago Solivan, y que por ello, la parte apelada era beneficiaria de la póliza número 3403135, con pleno derecho a exigir la satisfacción del importe pagadero dado a que se cumplió la condición estipulada en dicha póliza. Consecuentemente, entre otras cosas, el foro primario le ordenó a COSVI que satisficiera la suma de $50,000.00 (cincuenta mil dólares) a favor de la señora Solivan Torres, equivalentes al cincuenta por ciento de la cantidad asegurada en la póliza, por concepto de resarcimiento de los daños producto de su incumplimiento contractual. Adicional, le impuso el pago de honorarios por temeridad.

Inconforme con la determinación del foro *a quo*, el 10 de mayo de 2023, la parte apelante presentó la *Moción de Reconsideración de Sentencia Parcial Archivada en Autos el 25 de abril de 2023*. El 11 de mayo de 2023, la parte apelante presentó la *Moción de Reconsideración de Sentencia Parcial Archivada en Autos el 25 de abril de 2023 (Revisada)*. Mediante *Orden* notificada el 15 de mayo de 2023, el foro de primera instancia ordenó que la moción del 10 de mayo de 2023 fuera tomada por no puesta. No obstante, subsiguientemente, mediante *Resolución*, determinó tomar en consideración la moción de reconsideración presentada el 10 de mayo de 2023, y dejó sin efecto la *Orden* emitida el 15 de mayo de 2023.

Luego de varias incidencias innecesarias pormenorizar, la primera instancia judicial mediante *Resolución* emitida el 8 de agosto de 2023[1], declaró No Ha Lugar la *Moción de Reconsideración*

---

[1] Notificada el 11 de agosto de 2023.

*de Sentencia Parcial Archivada en Autos el 25 de abril de 2023,* presentada por la parte apelante.

Aun inconforme con la determinación del Tribunal de Primera Instancia, la parte apelante acudió ante este foro y esgrimió los siguientes señalamientos de error:

- Erró el Honorable Tribunal de Instancia al declarar Ha Lugar la moción en solicitud de sentencia sumaria parcial e imposición de honorarios de abogado por temeridad presentada por la parte demandante cuando existen hechos sustanciales [en] controversia desde el punto de vista de la reclamación de la demandante que justifican revocar la sentencia.

- Erró el Honorable Tribunal de Primera Instancia al determinar que COSVI "ocultó" una carta y que por tanto obró de "mala fe", y al resolver que COSVI está obligada a responder por daños y perjuicios a la demandante incluyendo los honorarios de abogado pactados entre la demandante y su abogado cuando dicha carta formaba parte del récord y sin evidencia fáctica admisible que establezca la referida mala fe.

- Erró el Honorable Tribunal de Primera Instancia al imponerle a COSVI el pago de $5,000 en concepto de honorarios por temeridad. No existe evidencia en el récord para establecer mala fe y/o temeridad.

- Erró el Tribunal al declarar No Ha Lugar la moción bajo la Regla 10.2 de Procedimiento Civil de COSVI cuando no existe relación jurídica alguna entre la demandante y COSVI, y habiendo cumplido COSVI con su deber de pagar al beneficiario nombrado por el dueño o tomador de la póliza.

Por su parte, la señora Solivan Torres presentó el *Alegato de la Parte Apelada.*

Con el beneficio de la comparecencia de las partes procedemos a resolver.

**II**

**A. *Sentencia Sumaria***

La sentencia sumaria es un mecanismo procesal disponible en nuestro ordenamiento que nos permite resolver controversias sin

que se requiera llegar a la etapa de juicio.[2] *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964 (2022); *Serrano Picón v. Multinational Life Ins.*, 2023 TSPR 118, 212 DPR ___ (2023); *González Meléndez v. Mun. San Juan*, 2023 TSPR 95, 212 DPR ___ (2023); *Birriel Colón v. Econo y Otros*, 2023 TSPR 120, 213 DPR ___ (2023); *Delgado Adorno v. Foot Locker Retail*, 208 DPR 622 (2022). La sentencia sumaria está regida por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, la cual desglosa los requisitos específicos con los que debe cumplir esta norma procesal. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015); *Rosado Reyes v. Global Healthcare,* supra, pág. 808.

Ante la ausencia de una controversia sustancial y real sobre hechos materiales, sólo resta aplicar el derecho pertinente a la controversia. *Serrano Picón v. Multinational Life Ins.*, supra. Cuando se habla de hechos materiales, nos referimos a aquellos que pueden determinar el resultado de la reclamación, de conformidad con el derecho sustantivo aplicable. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos materiales.[3] *Alicea Pérez v. Coop. Seg. Múlt. et al.*, 210 DPR 71 (2022); *Segarra Rivera v. Int'l Shipping et al.,* supra, pág. 5; *Rosado Reyes v. Global Healthcare.,* supra, pág. 808; *González Meléndez v. Mun. San Juan*, supra. Procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia admisible, se acredita la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si procede en derecho. *SLG*

---

[2] *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310 (2021); *Rosado Reyes v. Global Healthcare,* 205 DPR 796, 808 (2020).

[3] *Velázquez Ortiz v. Gobierno Mun. De Humacao*, 197 DPR 656, 662-663 (2017); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13; *Roldán Flores v. M. Cuebas, Inc.,* 199 DPR 664, 676 (2018).

*Fernández-Bernal v. RAD-MAN*, supra, pág. 13; *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 6; *Birriel Colón v. Econo y Otros,* supra; *González Meléndez v. Mun. San Juan*, supra.[4] De la prueba adjunta a la solicitud de sentencia sumaria, deberá surgir preponderadamente la inexistencia de controversia sobre los hechos medulares del caso. *Birriel Colón v. Econo y Otros*, supra.

Cónsono con esto, en el pasado el Tribunal Supremo de Puerto Rico ha afirmado que -utilizado ponderadamente- el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios de los tribunales y evitar el derroche de dinero y tiempo que implica la celebración de un juicio en su fondo. Véase *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615 (2009); *Padín v. Rossi,* 100 DPR 259 (1971); *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA,* 200

---

[4] Véase *Lugo Montalvo v. Sol Meliá Vacation*, supra, pág. 225; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

DPR 929, 940 (2018); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14.

Cumplidos estos requisitos, el Tribunal Supremo de Puerto Rico expresó además en *Pérez Vargas v. Office Depot*, supra, pág. 699, que el inciso (e) de la Regla 36.3 establece lo siguiente:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente. El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito. Si la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal. 32 LPRA Ap. V, R. 36.3 (e).

La sentencia sumaria no procederá en las instancias que: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o 4) como cuestión de derecho, no proceda. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14; *Serrano Picón v. Multinational Life Ins.*, supra.

Cónsono con lo antes indicado, nuestra Máxima Curia ha expresado que, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones. *Birriel Colón v. Econo y Otros*, supra; *Ramos Pérez v. Univisión*, supra, págs. 215-216. Las meras afirmaciones no bastan. *Íd.* "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos

presentados por el promovente". *Ramos Pérez v. Univisión*, supra, pág. 215. (Cita omitida). *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677. Además, se le exige a la parte que se oponga ciertas exigencias adicionales. Primeramente, deberá presentar una relación concisa y organizada de los hechos esenciales y pertinentes que, a su juicio, estén en controversia, citando específicamente los párrafos según fueron enumerados por el promovente de la moción. *SLG Fernández-Bernal v. RAD-MAN*, pág. 15 679 193 DPR 100 (2015). También, deberá enumerar los hechos que no estén en controversia, con indicación de los párrafos o páginas de las declaraciones juradas u otra prueba admisible donde se establezcan estos. *Íd.* En adición, deberá esbozar las razones por las cuales no se debe dictar sentencia sumaria, argumentando el derecho aplicable. *Íd.*

Si el oponente no controvierte los hechos propuestos de la forma en la que lo exige la Regla 36.3 de Procedimiento Civil, *supra*, se podrán considerar como admitidos y se dictará la Sentencia Sumaria en su contra, si procede. *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677.

Respecto a la revisión de las sentencias sumarias, el foro apelativo deberá utilizar los mismos criterios que el Tribunal de Primera Instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 115 (2015); *González Meléndez v. Mun. San Juan*, supra. Nuestro Máximo Foro ha sido claro en que, [l]os tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Birriel Colón v. Econo y Otros*, supra. De acuerdo a lo anterior, el foro apelativo está obligado a examinar *de novo* la totalidad de los documentos incluidos en el expediente de la forma más favorable al

promovido. *Íd.   Serrano Picón v. Multinational Life Ins.,* supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 116.

## B. Regla 44.1-Honorarios de Abogados

La concesión de honorarios de abogado está regulada por la Regla 44.1 (d) de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 44.1 (d). La misma autoriza al Tribunal a imponer honorarios de abogado cuando una parte o su abogado procede con temeridad o frivolidad. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163 (2022); *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 147 (2022).

La *temeridad* se define como aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables. *Íd*; *Pérez Rodríguez v. López Rodríguez et al.*, supra, pág. 193; *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Sobre este particular, nuestro más Alto Foro ha expresado también que "[l]a temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia." *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001).

Por otro lado, la frivolidad se define como "aquello que no tiene razón de ser, sin méritos, sin peso ni lógica alguna." *Depto. Rec. v. Asoc. Rec. Round Hill*, 149 DPR 91, 100 (1999). Sólo lo claramente irrazonable o inmeritorio debe dar paso a una determinación de frivolidad por un tribunal apelativo. *Id.*

En *Feliciano Polanco v. Feliciano González,* 147 DPR 722, 730 (1999), el Tribunal Supremo de Puerto Rico indicó que "[a] modo de ejemplo, constituyen actos temerarios los siguientes:

cuando el demandado contesta la demanda y niega su responsabilidad total, aunque la acepte posteriormente; cuando se defiende injustificadamente de la acción que se presenta en su contra; cuando no admite francamente su responsabilidad limitada o parcial, a

pesar de creer que la única razón que tiene para oponerse a la demanda es que la cuantía es exagerada; cuando se arriesga a litigar un caso del que prima facie se desprende su negligencia; o cuando niega un hecho que le consta ser cierto."

El propósito de la imposición de honorarios de abogado en casos de temeridad es "establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito." *Andamios de PR v. Newport Bonding,* 179 DPR 503, 520 (2010); *Pérez Rodríguez v. López Rodríguez et al.*, supra, pág. 193; *SLG González-Figueroa v. SLG et al.*, supra, págs. 148-149; *Fernández v. San Juan Co.,* Inc., 118 DPR 713, 718 (1987).

Además, la imposición de honorarios de abogado, tiene como objetivo disuadir la litigación innecesaria y alentar las transacciones mediante la imposición de sanciones a la parte temeraria para compensar los perjuicios económicos y las molestias sufridas por la otra parte. *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718-719 (1987). Nuestro más Alto Foro ha dispuesto que, la facultad de imponer honorarios de abogados es la mejor arma que ostentan los tribunales para gestionar de forma eficaz los procedimientos judiciales y el tiempo de la administración de la justicia, así como para proteger a los litigantes de la dilación y los gastos innecesarios. *SLG González-Figueroa v. SLG et al.*, supra, pág. 149.

La determinación sobre si una parte ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador y no será variada en apelación a menos que se demuestre que éste ha abusado de su discreción. *Pérez Rodríguez v. López Rodríguez et al.*, supra, pág. 193; *SLG González-Figueroa v. SLG et al*, supra, pág. 150. Tampoco será variada la partida concedida a menos que

resulte ser excesiva, exigua o constituya un abuso de discreción. *Feliciano Polanco v. Feliciano González, supra*, a las págs. 728-729.

### C. Regla 10.2 de Procedimiento Civil

La Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, faculta a la parte contra la cual se presente una alegación en su contra a presentar una moción de desestimación, por los fundamentos siguientes: 1) falta de jurisdicción sobre la materia; 2) falta de jurisdicción sobre la persona; 3) insuficiencia del emplazamiento; 4) insuficiencia del diligenciamiento del emplazamiento; 5) dejar de exponer una reclamación que justifique la concesión de un remedio, y 6) dejar de acumular una parte indispensable. *Cobra Acquisitions, LLC v. Municipio de Yabucoa et al.*, 210 DPR 384 (2022); *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA,* 189 DPR 1033, 1049 (2013). La precitada regla permite a la parte demandada presentar una moción de desestimación debidamente fundamentada previo a contestar la demanda instada en su contra. *Conde Cruz v. Resto Rodríguez*, 205 DPR 1043 (2020); *Casillas Carrasquillo v. ELA*, 209 DPR 240 (2022).

Asimismo, el Tribunal Supremo de Puerto Rico ha establecido que, al momento de considerar una moción de desestimación, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorable a la parte demandante. *Cobra Acquisitions, LLC v. Municipio de Yabucoa et al.*, supra, pág. 396; *Casillas Carrasquillo v. ELA*, supra, pág. 247; *Rivera Sanfeliz v. Jta. Dir. FirstBank*, supra, pág. 49; *Cruz Pérez v. Roldán Rodríguez*, 206 DPR 261, 267 (2021); *Colón Rivera et al. v. ELA*, supra, pág. 1049. Es por lo que, para que proceda una moción de desestimación, "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio

alguno bajo cualquier estado de [D]erecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor". *Cobra Acquisitions, LLC v. Municipio de Yabucoa et al.*, supra, pág. 396; *Casillas Carrasquillo v. ELA*, supra, pág. 247; *Cruz Pérez v. Roldán Rodríguez*, supra, págs. 267-268; *Rivera Sanfeliz v. Jta. Dir. FirstBank*, supra, pág. 49; *Ortiz Matías et al. v. Mora Development*, 187 DPR 649, 654 (2013); *López García v. López García*, 199 DPR 50, 69-70 (2018).

### D. El Contrato de Seguro

En ocasiones recientes, el Tribunal Supremo de Puerto Rico ha reconocido el alto interés público con el que está investido el negocio de seguros en Puerto Rico, "debido al papel que juega en la protección de los riesgos que amenazan la vida o el patrimonio de los ciudadanos" y "la extraordinaria importancia que juegan los seguros en la estabilidad de nuestra sociedad". *RJ Reynolds v. Vega Otero,* 197 DPR 699, 706 (2017) (citando a *Natal Cruz v. Santiago Negrón et al.,* 188 DPR 564, 575 (2013)). Por esas razones, los seguros cumplen la función social de atenuar los riesgos inherentes de las relaciones comerciales, al amortiguar los giros violentos de incertidumbre propios del mercado, aminorar sus efectos y propiciar el crecimiento estable de la economía. *Rivera Matos, et als.* v. *Triple-S, et al.*, 204 DPR 1010 (2020).

A este contrato de gran complejidad e importancia se le define como aquel por el que una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable si se produce un suceso incierto previsto en el mismo. 26 LPRA sec. 102[5]. Por lo tanto, su propósito es indemnizar y proteger al asegurado transfiriendo el riesgo a la aseguradora si ocurre el evento especificado en el contrato.

---

[5] Ley 77 de 19 de junio de 1957, según enmendada, Código de Seguros de Puerto Rico.

*Integrand Assurance v. CODECO et al.*, 185 DPR 146, 161 (2012). Los términos del contrato de seguro están contenidos en la póliza. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880 (2012). La póliza es el instrumento escrito en que se expresa un contrato de seguro y es ley entre las partes. *Id.*; 26 LPRA sec. 1114(1).

Se denomina póliza el documento donde se consignan los términos que rigen el contrato de seguro. Art. 11.140(1) del Código de Seguros, 26 LPRA sec. 1114(1). Conforme dispone el propio Código de Seguros, en primera instancia las cláusulas de una póliza se interpretarán de manera global, examinando el conjunto total de las disposiciones, términos y condiciones vigentes a la fecha que se juzgue relevante. Art. 11.250 del Código de Seguros, 26 LPRA sec. 1125. *Rivera Matos, et als.* v. *Triple-S, et al.*, supra, pág. 1020 citando con aprobación a *R.J. Reynolds v. Vega Otero*, supra pág. 707; y *Viruet et al. v. SLG Casiano-Reyes*, 194 DPR 271 (2015).

En consecuencia, corresponde interpretar el lenguaje plasmado en la póliza en su acepción de uso común general, sin ceñirse demasiado al rigor gramatical. *Jiménez López et al. v. SIMED,* 180 DPR 1 (2010); *SLG Francis-Acevedo v. SIMED*, 176 DPR 372 (2009); *Echandi Otero v. Stewart Title*, 174 DPR 355 (2008). De igual forma se examinarán las cláusulas desde la óptica de una persona normal de inteligencia promedio que fuese a adquirir el seguro. *SLG Ortiz-Alvarado v. Great American,* 182 DPR 48 (2011). De este modo, se garantiza que el asegurado que adquiere una póliza reconoce el alcance de la protección del producto que ha comprado. *Rivera Matos, et als.* v. *Triple-S, et al.*, supra, pág. 1020.

Los términos del contrato de seguro se consideran claros cuando su lenguaje es específico, sin que dé lugar a dudas, ambigüedades o sea susceptible de diferentes interpretaciones. *RJ Reynolds v. Vega Otero*, supra, pág. 708; *Echandi Otero v. Stewart*

*Title*, supra, pág. 370; *SLG Francis-Acevedo v. SIMED,* supra, pág. 387.

Respecto a la vigencia de una póliza de seguro de vida, nuestro Máximo Foro ha expresado que esta, se desarrolla en dos etapas: 1) durante la vida del asegurado y 2) a la muerte de este. *Pilot Life Ins. Co. v. Crespo Martínez*, 136 DPR 624, 636 (1994). En la primera etapa, quien aparece como dueño es el titular de la póliza, y por ende, tiene todos los derechos que esta le confiere. El Tribunal Supremo ha dispuesto que, "[l]a determinación de a quién pertenece la póliza durante la primera etapa cobra importancia en cuanto a los derechos que se tienen sobre ella. Únicamente el titular o dueño de la póliza podrá ejercerlos." *Íd.* Entre tales derechos se encuentra el poder de realizar cambios en la designación de beneficiario. *Íd.* pág. 637. El aludido derecho, se rige por lo establecido en el contrato de seguro. El mismo puede ser reservado, condicionado o renunciado. *Íd.*

En cuanto a la segunda etapa, esta comienza cuando muere el asegurado. Es desde entonces que, el beneficiario adquiere un derecho propio y distinto al perteneciente al tomador del seguro sobre el producto de la póliza. *Íd.* pág. 636.

Nuestra más Alta Curia ha reseñado que, no empece el modo de adquisición de la póliza, el derecho sobre la titularidad de una póliza de seguro de vida es personalísimo. Cónsono con ello, "será titular aquel sobre la vida del cual se haya tomado el seguro por razón de la relación tan íntima entre su persona y la existencia del contrato." *Íd.* págs. 636-637.

**III**

En el caso de epígrafe, en esencia, nos corresponde evaluar si incidió el foro primario al dictar sentencia sumaria a favor de la señora Solivan Torres, puesto que, la parte apelante en su primer señalamiento de error, aduce que, existen hechos materiales en

controversia que justifican revocar la sentencia apelada. En el ejercicio de nuestra función revisora nos corresponde: 1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; 2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; 3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; y 4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia[6].

De un ponderado análisis del expediente ante nuestra consideración, surge que, la parte apelada cumplió sustancialmente con las formalidades dispuestas por la Regla 36 de Procedimiento Civil, *supra*. Puesto que esta, incluyó las alegaciones de las partes, realizó una enumeración de hechos que entendía incontrovertidos, de manera detallada, separada y sustentada, con indicación de las páginas de las declaraciones juradas y de otra prueba admisible en evidencia, así como las razones por las cuales el foro de primera instancia debía dictar sentencia sumaria[7].

Por otro lado, colegimos que, la parte apelante no cumplió con las formalidades dispuestas por la Regla 36 de Procedimiento Civil, *supra*. Lo anterior, debido a que no presentó prueba con el propósito de impugnar varios hechos propuestos por la parte apelada. Recordemos que, nuestro ordenamiento jurídico dispone que la

---

[6] *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 679.
[7] 32 LPRA Ap. V. R. 36.3; *Rodríguez García v. UCA,* supra, pág. 940; *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14.

parte que se oponga a la sentencia sumaria deberá controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones.[8]

En cumplimiento con la normativa vigente sobre la sentencia sumaria, evaluamos de *novo* las determinaciones de hechos esbozadas por el foro primario y las acogemos, por no estar en controversia y estar basadas en evidencia suficiente. Además, determinamos que no existen controversias adicionales.

Superada esta primera etapa, ahora nos corresponde determinar si el foro de primera instancia aplicó correctamente el Derecho a la controversia de epígrafe.

En su cuarto señalamiento de error, la parte apelante sostiene que, el foro primario incidió al declarar No Ha Lugar la moción donde solicitó la desestimación bajo la Regla 10.2 de Procedimiento Civil, *supra*, cuando a su juicio, no existe relación jurídica entre las partes, y debido a que, COSVI cumplió con su deber de pagar al beneficiario nombrado por el dueño o tomador de la póliza. Adelantamos que, no le asiste la razón. Veamos.

Según expuesto, el 2 de junio de 2004, la señora Santiago Solivan y el señor Davis Rodríguez, presentaron ante COSVI una solicitud de seguro de vida individual, donde la asegurada lo era la señora Santiago Solivan a término de treinta años, con la cantidad asegurada de $100,000.00. En su solicitud, la señora Santiago Solivan designó como beneficiario al señor Davis Rodríguez y como beneficiarios contingentes al señor William P. Davis y a la señora Gladys Rodríguez, y se reservó el derecho de cambiar tales designaciones.

Posteriormente, la señora Santiago Solivan se presentó junto a su hermana, la señora Lisandra Santiago Solivan, a la Oficina

---

[8] *Birriel Colón v. Econo y Otros*, supra; *Ramos Pérez v. Univisión*, supra, págs. 215-216.

Central de COSVI, al Departamento de Servicios al Cliente. Lo anterior, con el propósito de solicitar un cambio de beneficiarios y de dirección postal en la póliza. En su solicitud de cambio de beneficiarios correspondiente a la póliza de seguro de vida individual número 3403135, designó como beneficiarios a su madre, la señora Solivan Torres, y a su hijo William Joseph Davis Santiago. El 7 de enero de 2016, luego de que la señora Santiago Solivan cumplimentara la solicitud de cambio de dirección postal y beneficiarios, la representante del Departamento de Servicios al Cliente de COSVI, le entregó copia de esta, y una copia de "Hoja de Servicio" que acreditaba el trámite allí realizado.

No fue hasta el 23 de diciembre de 2020, que se le notificó a la señora Santiago Solivan mediante misiva con igual fecha firmada por el supervisor del Departamento de Selección y Emisión Individual de COSVI, el señor Abdel Meléndez, que el cambio de beneficiarios solicitado en la póliza de vida individual número 3403135 había sido realizado. Cabe destacar que, a la fecha de la carta recibida a la dirección postal P.O. Box 3428, Guaynabo, PR 00970, la señora Santiago Solivan había fallecido.

Para el 28 de enero de 2021, la parte apelada presentó personalmente ante COSVI una solicitud de beneficios por muerte de la señora Santiago Solivan, en relación a la póliza de seguro de vida individual número 3403135. Así las cosas, mediante carta con fecha del 5 de febrero de 2021, firmada electrónicamente por la señora Graciela N. Arce Hernández, Analista de Reclamaciones de COSVI, se le notificó a la parte apelada que no procedía el pago a su favor de los beneficios por muerte esbozados en la póliza de seguro de vida individual número 3403135, en la medida en que, tal pago había sido realizado "al beneficiario designado por la señora Santiago Solivan". De acuerdo al expediente, el pago fue realizado al señor Davis Rodríguez, luego de que el 16 de diciembre de 2020,

este presentara una solicitud de beneficios por la muerte de la señora Santiago Solivan.

Subsiguientemente, la señora Solivan Torres presentó una solicitud de reconsideración ante la denegatoria de la reclamación de beneficios por muerte. Esta fue denegada mediante carta fechada 31 de marzo de 2021.

Conforme el derecho reseñado, el contrato de seguro es definido como aquel por el que una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable si se produce un suceso incierto previsto en el mismo.[9] Este tiene como propósito el indemnizar y proteger al asegurado transfiriendo el riesgo a la aseguradora si ocurre el evento especificado en el contrato.[10] Los términos del contrato de seguro están contenidos en la póliza.[11] La póliza es el instrumento escrito en que se expresa un contrato de seguro y es ley entre las partes.[12] De acuerdo al Código de Seguros, en primera instancia, las cláusulas de una póliza se interpretarán de manera global, examinando el conjunto total de las disposiciones, términos y condiciones vigentes a la fecha que se juzgue relevante.[13] Asimismo se examinarán las cláusulas desde la óptica de una persona normal de inteligencia promedio que fuese a adquirir el seguro.[14] De este modo, se garantiza que el asegurado que adquiere una póliza reconoce el alcance de la protección del producto que ha comprado.[15]

En cuanto a la vigencia de una póliza de seguro de vida, el Tribunal Supremo ha dispuesto que esta se desarrolla en dos

---

[9] Ley 77 de 19 de junio de 1957, *supra.*
[10] *Integrand Assurance v. CODECO et al.*, supra, pág. 161.
[11] *Maderas Tratadas v. Sun Alliance et al.*, supra, pág. 897.
[12] *Íd.*; 26 LPRA sec. 1114(1).
[13] Art. 11.250 del Código de Seguros, 26 LPRA sec. 1125. *Rivera Matos, et als. v. Triple-S, et al.*, supra, pág. 1020
[14] *SLG Ortiz-Alvarado v. Great American,* supra, pág. 73.
[15] *Rivera Matos, et als. v. Triple-S, et al.*, supra, pág. 1020.

etapas, a saber: 1) durante la vida del asegurado y 2) a la muerte de este. En la primera etapa, quien aparece como dueño es el titular de la póliza, y por ende, tiene todos los derechos que esta le confiere. Nuestro Máximo Foro ha expresado que, "[l]a determinación de a quién pertenece la póliza durante la primera etapa cobra importancia en cuanto a los derechos que se tienen sobre ella. Únicamente el titular o dueño de la póliza podrá ejercerlos."[16] Dentro de estos derechos se encuentra el poder realizar cambios en la designación de beneficiarios. Tal derecho se rige por lo establecido en el contrato de seguro, y puede ser reservado, condicionado o renunciado.[17] Nuestra más Alta Curia ha reseñado que, no empece el modo de adquisición de la póliza, el derecho sobre la titularidad de una póliza de seguro de vida es personalísimo. Cónsono con ello, "será titular aquel sobre la vida del cual se haya tomado el seguro por razón de la relación tan íntima entre su persona y la existencia del contrato".[18]

Respecto a la segunda etapa, esta comienza cuando muere el asegurado. Es desde entonces que, el beneficiario adquiere un derecho propio y distinto al perteneciente al tomador del seguro sobre el producto de la póliza.[19]

De acuerdo al derecho expuesto, la señora Santiago Solivan estaba facultada para modificar los beneficiarios de la póliza de seguro de vida número 3403135, puesto que, esta era la asegurada y consecuentemente, dueña de la póliza.[20] Destacamos que, quien aparece como dueña de la póliza es la titular, y por ello, tiene todos los derechos que esta le confiere.[21] Además, en la Tabla de Información Básica de la póliza de seguro de vida, quien aparece

---

[16] *Pilot Life Ins. Co. v. Crespo Martínez*, supra, pág. 636.
[17] *Íd.* pág. 637.
[18] *Íd.* págs. 636-637.
[19] *Íd.* pág. 636.
[20] Véase *Pilot Life Ins. Co. v. Crespo Martínez*, supra, págs. 636-637.
[21] *Íd.*

como asegurada y dueña de la póliza es la señora Santiago Solivan.[22] De igual forma, en el momento en que la señora Santiago Solivan se presentó en las oficinas de COSVI con el propósito de solicitar el cambio de beneficiarios y de dirección, una representante del Departamento de Servicios al Cliente de COSVI corroboró que esta aparecía registrada como dueña de la póliza.[23]

Basado en lo anterior, la señora Santiago Solivan ejerció la facultad otorgada por nuestro ordenamiento jurídico, y realizó el cambio de beneficiarios donde nombró a su madre, la señora Solivan Torres, y a su hijo William J. Davis Santiago como nuevos beneficiarios. Queda claro que el aludido cambio fue avalado por COSVI, ya que, la solicitud de cambio fue aprobada por el Departamento de Selección y Emisión Individual. Así se hizo constar mediante carta fechada 23 de diciembre de 2020, y firmada por el señor Abdel Meléndez, quien era el supervisor del Departamento de Selección y Emisión Individual de COSVI, es decir, un oficial con autoridad para contratar o alterar un contrato de seguro[24]. La referida misiva fue notificada a la nueva dirección postal de la señora Santiago Solivan, esta le informó que "[e]l cambio de beneficiarios solicitado en su póliza fue realizado. Favor de incorporar este documento al contrato de su póliza para facilitar el proceso en caso de reclamación".[25] Además, en la carta aparecieron los nombres de los beneficiarios originalmente nombrados con un cero por ciento (0.00%) asignado[26]. Al examinar el expediente, no surge la existencia de comunicación escrita alguna expedida por COSVI donde denegara el cambio de beneficiarios solicitado por la señora Santiago Solivan.

---

[22] Véase determinaciones de hechos núm. 27 y 28.
[23] Véase determinaciones de hechos núm. 35, 36 y 37.
[24] Véase determinaciones de hechos núm. 45 y 47.
[25] Véase determinación de hecho núm. 45.
[26] Véase determinación de hecho núm. 46.

Establecido lo anterior, pasamos a la segunda etapa de la vigencia de una póliza de seguro de vida. Primeramente, diferimos respecto planteamiento de COSVI sobre que no existe relación jurídica entre esta y la parte apelada. Lo anterior, por motivo de que sí existe una relación jurídica entre las partes ya que, al momento en que murió la señora Santiago Solivan, es cuando la señora Solivan Torres, por ser beneficiaria designada, adquirió un derecho propio y distinto al perteneciente al tomador del seguro sobre el producto de la póliza.[27] Este derecho le brinda la facultad de reclamar el beneficio pactado, al ser la beneficiaria designada por la dueña y asegurada de la póliza.

Por lo tanto, no procedía la desestimación de la demanda bajo la Regla 10.2 de Procedimiento Civil, *supra*.

En su segundo y tercer señalamiento de error, la parte apelante sostiene que, incidió el Tribunal de Primera Instancia al determinar que COSVI ocultó una carta y que por ello, obró de mala fe y al imponerle honorarios de abogado por temeridad.

Por encontrarse intrínsecamente relacionados, discutiremos ambos señalamientos de error de forma conjunta. Adelantamos que, no le asiste la razón. Veamos.

Como es sabido, la imposición de honorarios de abogados recae en la sana discreción del tribunal sentenciador. Examinado el expediente ante nuestra consideración, no podemos concluir que la actuación del foro de primera instancia constituyó un abuso de su discreción que amerite nuestra intervención con la imposición de honorarios de abogado. Consecuentemente, los errores antes señalados no fueron cometidos por el Tribunal de Primera Instancia.

---

[27] *Pilot Life Ins. Co. v. Crespo Martínez,* supra, pág. 636.

**IV**

Por los fundamentos que anteceden, se confirma el dictamen apelado.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones