WILSON FELICIANO POLANCO, demandante recurrido, *v.* MIGUEL FELICIANO GONZÁLEZ ET AL., demandados recurrentes.

*Número:* RE-94-488          *Resuelto:* 17 de marzo de 1999

I

*Domingo Emanuelli Hernández,* abogado de los recurrentes; *Carlos L. Lorenzo Quiñones*, abogado del recurrido.

## SENTENCIA

El 28 de septiembre de 1994, el antiguo Tribunal Superior, Sala de Aguadilla, dictó sentencia en la cual condenó a la parte demandada al pago de ciento cinco mil novecientos

---

ochenta y dos dólares con sesenta y dos centavos ($105,982.62) en daños y perjuicios, más veinte mil dólares ($20,000) en honorarios de abogado. De esta sentencia recurre ante nos la parte demandada, solicitando que revisemos las partidas concedidas por ser extremadamente elevadas y que, además, tratándose de un accidente de tránsito, apliquemos las deducciones correspondientes de la A.C.A.A.

A continuación exponemos los hechos que dieron lugar a la referida sentencia y procedemos a resolver los planteamientos de la recurrente.

## I

El 3 de marzo de 1992, el Sr. Wilson Feliciano Polanco, aquí demandante recurrido, fue impactado en la rodilla derecha por un vehículo de motor perteneciente al Municipio de Utuado y conducido en el desempeño de sus funciones regulares por el guardia municipal, Sr. Miguel Rivera González. El impacto ocurrió cuando el señor Feliciano cruzaba a pie la vía por la cual transitaba el oficial Rivera González y, según las determinaciones del tribunal sentenciador, dicho accidente fue el resultado de la negligencia combinada de ambos.

El impacto sufrido por el señor Feliciano le produjo una lesión de desgarre del ligamento cruzado anterior que requirió tratamiento con un neurocirujano, un fisiatra y un terapista físico, además de una cirugía de reconstrucción del ligamento en la que se le injertó un ligamento de hueso extraído de un tendón que no había sufrido por el impacto. Aun así, el señor Feliciano quedó con una incapacidad permanente en su rodilla que le impide desempeñarse en el campo de la construcción como lo hacía antes del impacto. No obstante, según la prueba pericial, su incapacidad no le impide desempeñarse en otras labores para las cuales po-

dría recibir adiestramiento, siempre y cuando éstas no le exijan un esfuerzo físico como el del trabajo de construcción. Tampoco está incapacitado para caminar, correr bicicleta, subir y bajar escaleras, y practicar algunos deportes como la natación. En fin, el señor Feliciano quedó con una incapacidad física permanente que en su caso resulta ser severa por el efecto que tiene sobre su habilidad para desempeñarse en su ocupación habitual.

A la fecha de este accidente, el señor Feliciano tenía treinta y cuatro (34) años de edad, poseía un décimo grado de escolaridad y se desempeñaba como obrero de construcción y albañil, devengando el salario mínimo federal ($5.25 por hora). Testificó que ese trabajo era el único que sabía realizar; el único que había realizado durante los últimos diez (10) años y que desde el accidente no había podido trabajar.

## II

Con estos hechos ante sí, el antiguo Tribunal Superior dictó sentencia imputándole un setenta por ciento (70%) de negligencia a la parte demandada y un treinta por ciento (30%) de negligencia a la parte demandante. Valoró los daños físicos, sufrimientos y angustias mentales de la parte demandante en cincuenta mil dólares ($50,000) y calculó su lucro cesante en ciento un mil cuatrocientos tres dólares con setenta y cuatro centavos ($101,403.74). Finalmente, condenó a la parte demandada al pago de veinte mil dólares ($20,000) en honorarios de abogado.

Los demandados recurrentes cuestionan las cuantías concedidas por entender que resultan excesivas.

## III

En cuanto a la partida de cincuenta mil dólares ($50,000) concedida por el tribunal de instancia en con-

cepto de los daños físicos y mentales sufridos por el señor Feliciano, los demandados entienden que "aunque no [es] exagerad[a], [es] elevad[a] a tenor con lo resuelto por esta Honorable Superioridad en el caso *Saurí v. Colón*, 91 JTS 14 (1991) y *Ru[i]z v. Sears*, 100 D.P.R. 867 [sic] (1972)". Solicitud de revisión, pág. 7.

Hemos examinado los casos citados por los recurrentes y concluimos que respaldan la confirmación de la partida concedida por el·tribunal sentenciador en concepto de daños físicos y mentales. En primer lugar, mediante la sentencia del caso *Saurí Rodríguez v. Colón Martínez*, 127 D.P.R. 900 (1991), modificamos una partida de daños mentales porque entendimos que la prueba de la parte demandante no justificaba la suma otorgada. Al llegar a esta determinación citamos la norma prevaleciente en cuanto a nuestra intervención con la valorización de los daños y perjuicios por parte de los tribunales de instancia, y concluimos que la parte recurrente había cumplido con la obligación que dicha norma le impone. Citando de *Rodríguez Cancel v. A.E.E.*, 116 D.P.R. 443, 451 (1985), expresamos:

No hay duda de que en relación con esta difícil y angustiosa labor de estimación de daños, los tribunales de instancia, de ordinario, están en una mejor posición que los tribunales apelativos para evaluar la situación por cuanto son los que tienen contacto directo con la prueba que a esos efectos presenta la parte que los reclama. *Publio Díaz v. E.L.A.*, 106 D.P.R. 854 (1978). Ahí la razón para la norma de abstención judicial; esto es, de que este Tribunal no intervendrá con la decisión que a ese respecto emitan los tribunales de instancia a menos que las cuantías concedidas sean ridículamente bajas o exageradamente altas, *Valldejuli Rodríguez v. A.A.A.*, 99 D.P.R. 917 (1971), *Urrutia v. A.A.A.*, supra, y de que la parte que ante este Tribunal solicita la modificación de las sumas concedidas a nivel de instancia viene obligada a demostrar la existencia de las circunstancias que hacen meritorio el que se modifiquen las mismas. *Canales Velázquez v. Rosario Quiles*, 107 D.P.R. 757 (1978).

A diferencia del caso citado, en el caso de autos los recurrentes no han demostrado una sola circunstancia que

haga meritoria la modificación de la suma que concedió el tribunal a quo. De hecho, los mismos recurrentes reconocen que la suma no resulta exageradamente alta, sino únicamente elevada. Como consecuencia, no podemos modificar la suma impugnada usando como base la norma del caso *Saurí Rodríguez v. Colón Martínez*, supra.

En segundo lugar, los recurrentes citan a *Ruiz Guardiola v. Sears Roebuck*, 100 D.P.R. 817 (1972). Este es otro caso en el cual modificamos las cuantías concedidas por el tribunal de instancia por no estar justificadas por la prueba. Sin embargo, al igual que con el caso *Saurí Rodríguez v. Colón Martínez*, supra, y a diferencia del caso de autos, en el caso citado la parte recurrente nos demostró aquellas circunstancias que justificaron nuestra conclusión de que el tribunal de instancia había actuado erróneamente.

En fin, en el caso ante nos la parte recurrente no ha invocado elemento alguno que justifique nuestra intervención para modificar la suma impuesta para la compensación de los daños físicos y sufrimientos mentales sufridos por el señor Feliciano. El error señalado en este sentido, no fue cometido.

IV

En cuanto a la partida en concepto de lucro cesante, el tribunal de instancia dispuso como sigue:

> Tomando en cuenta el impedimento médico que padece el demandante y las limitaciones que ello implica a su capacidad como obrero no diestro, su falta de destrezas físicas y mentales para desempeñarse en labores distintas a las que hacía antes del accidente, se concluye que está incapacitado para generar ingresos en el área de la construcción. Tenemos motivos suficientes para dudar que pueda encontrar empleo remunerado en otras áreas que no sean las que había desempeñado antes del accidente.

Partiendo de lo anterior, el tribunal computó el lucro

cesante para treinta y un años (31) de vida útil que se esperaba que el señor Feliciano hubiera tenido a no ser por la incapacidad que le causó el impacto a la rodilla.

Esta determinación la impugnan los recurrentes por entender que la prueba demostró que el señor Feliciano sí estaba capacitado para conseguir trabajo en otro campo que no fuera el de la construcción. Sostienen que "el Tribunal de Instancia hizo el cálculo matemático según la jurisprudencia establecida, sin embargo, obvió que la prueba médica que tenía ante sí era indicativa de que este señor no estaba incapacitado y que podía rehabilitarse para trabajar en otras funsiones [sic]; entendemos que el Tribunal de Instancia se equivocó al declarar que este señor estaba incapacitado totalmente para ejercer cualquier función elevando exageradamente la partida que concedió por lucro cesante y resultando éste [sic] improcedente en derecho". Alegato, pág. 7.

Tienen razón los recurrentes. A pesar de que como norma general no intervendremos con las determinaciones de hechos y adjudicación de credibilidad del tribunal de instancia en ausencia de error manifiesto, pasión, prejuicio o parcialidad,([1]) en el caso de autos se trata de una situación excepcional. En primer lugar, porque la prueba pericial aportada por el Dr. Manuel Benítez Corujo, testigo de los demandantes recurridos, demostró que "en su opinión Wilson se puede rehabilitar en otra profesión ..." (Exposición Narrativa de la Prueba, pág. 2) y que "la incapacidad que tiene el Sr. Wilson Feliciano Polanco es que éste no puede parar de golpe o cambiar de dirección súbitamente y que por eso está incapacitado para ser albañil".([2]) Exposi-

---

([1]) *Quiñones López v. Manzano Pozas*, 141 D.P.R. 139 (1996); *Vélez v. Srio. de Justicia*, 115 D.P.R. 533 (1984); *Ramos Acosta v. Caparra Dairy, Inc.*, 113 D.P.R. 357 (1982).

([2]) Obsérvese que también es norma trillada que ante prueba documental o pericial no aplica la norma de no intervención con la apreciación de la prueba hecha por los foros de instancia porque estamos en igual posición adjudicativa. *Fernández v. Hosp. Gen. San Carlos, Inc.*, 113 D.P.R. 761, 773 (1983), y casos allí citados.

ción Narrativa de la Prueba, pág. 3. Y, en segundo lugar, porque entendemos que el tribunal cometió un error manifiesto al evaluar la prueba que le llevó a determinar que el señor Feliciano no podía conseguir otro empleo que no fuera como obrero de la construcción. Ello es así ya que el propio demandante, señor Feliciano, admitió que ha realizado otras tareas que no son de albañil, como por ejemplo, en la Ferretería Martínez y en una fábrica en Estados Unidos. Además, ni el demandante ni los demás testigos declararon que el señor Feliciano estuviera incapacitado para realizar otras tareas remunerables.

Por otro lado, no hay duda de que el demandante dejó de devengar ingresos durante el tiempo en que estuvo hospitalizado y en recuperación, lo cual debió haber sido computado y concedido por el tribunal de instancia en su sentencia. Asimismo, el tiempo que le tome conseguir otro trabajo, incluso cualquier período de readiestramiento para ello, y el hecho de que sus posibilidades de empleo futuro pudieran ser únicamente en trabajos de menor remuneración que su antigua ocupación de albañil, constituirían pérdidas que de haber sido probadas, deben compensarse como parte del lucro cesante.[3]

Procede, pues, devolver este asunto al tribunal de instancia para que se dilucide allí, a base de la correspondiente evidencia, la controversia respecto a la reducción real de ingresos y el lucro cesante del demandante conforme a los pronunciamientos que anteceden.

## V

Por último, examinamos si erró el antiguo Tribunal Superior al condenar a los demandados al pago de veinte mil dólares ($20,000) en honorarios de abogado. Al así hacerlo, mantenemos en cuenta que la determinación sobre si una

---

[3] *Díaz v. Alcalá*, 140 D.P.R. 959 (1996).

parte ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador y no será variada en apelación a menos que se demuestre que éste ha abusado de su discreción. Tampoco será variada la partida concedida a menos que resulte ser excesiva, exigua o constituya un abuso de discreción.[4]

La Regla 44.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone lo siguiente en cuanto a los honorarios de abogado:

> (d) *Honorarios de abogado.* En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.

Surge de esta disposición que la concesión de honorarios de abogado no está contenida en nuestro ordenamiento como un premio a la parte que prevalece en un pleito, sino más bien, como una sanción dirigida a una parte que con su actitud temeraria ha actuado en forma irrazonable o extremadamente litigiosa, afirmando hechos o conduciéndose sin fundamentos o motivos " 'con conciencia de la propia sinrazón' ". (Énfasis suplido.) *Santos Bermúdez v. Texaco P.R., Inc.*, 123 D.P.R. 351, 355 (1989).[5] Así, la norma general vigente en nuestro ordenamiento procesal civil es que la imposición de honorarios de abogado procede únicamente cuando una parte manifiesta una actitud obstinada "que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados,

---

[4] *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 339 (1989).

[5] *Corpak, Art Printing v. Ramallo Brothers*, 125 D.P.R. 724 (1990). Véase, también, A.J. Amadeo-Murga, *El valor de los daños en la responsabilidad civil*, San Juan, Ed. Esmaco, 1997, T. II, págs. 1215–1218.

con gravamen a veces exhorbitante para su peculio".[6] H.A. Sánchez Martínez, *Rebelde sin Costas*, 4(2) Boletín Judicial 14 (1982). Por el contrario, cuando no existe esta actitud caracterizada por la temeridad, los tribunales no pueden condenar al pago de honorarios sólo porque una parte no ha prevalecido en su postura.[7]

Al amparo de lo anterior, hemos resuelto que existe temeridad cuando por los actos de una parte se hace necesario un pleito que se pudo evitar; se prolonga un pleito innecesariamente, o se produce la necesidad de que otra parte incurra en gestiones evitables. A modo de ejemplo, constituyen actos temerarios los siguientes: cuando el demandado contesta la demanda y niega su responsabilidad total, aunque la acepte posteriormente; cuando se defiende injustificadamente de la acción que se presenta en su contra; *cuando no admite francamente su responsabilidad limitada o parcial,* a pesar de creer que la única razón que tiene para oponerse a la demanda es que la cuantía es exagerada; cuando se arriesga a litigar un caso del que prima facie se desprende su negligencia, o cuando niega un hecho que le consta ser cierto.[8]

Finalmente, hemos establecido que al fijar la cuantía de honorarios de abogado, el tribunal debe tomar en cuenta los siguientes factores: la naturaleza del litigio; las cuestiones de derecho involucradas en el litigio; la cuantía en controversia; el tiempo invertido; los esfuerzos y la actividad profesional que hayan tenido que desplegarse, y la habilidad y reputación de los abogados involucrados.

Es decir, su cálculo no tiene que ser equivalente al valor real de los servicios prestados o pagados, "sino con aquella suma que en consideración al grado de temeridad y demás

---

[6] H. Sánchez, *Rebelde sin Costas*, 4(2) Boletín Judicial 14 (1982), citado en *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713 (1987).

[7] *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294 (1990); *Santos Bermúdez v. Texaco P.R., Inc.*, supra; *Fernández v. San Juan Cement Co., Inc.*, supra.

[8] *Fernández v. San Juan Cement Co., Inc.*, supra; *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721 (1984).

circunstancias el tribunal concluye que representa razonablemente el valor de esos servicios". *Asociación de Condóminos v. Trelles Reyes*, 120 D.P.R. 574, 576 (1988).[9]

Tras el estudio de los autos y el análisis de los trámites procesales acontecidos en este caso, estamos convencidos de que el antiguo Tribunal Superior no abusó de su discreción al condenar a los demandados al pago de honorarios de abogado. La parte demandada negó haber incurrido en responsabilidad alguna aun cuando era fácil advertir de los hechos presentes en este caso la negligencia parcial de dicha parte. No obstante, nos parece que la cuantía impuesta en tal concepto es exageradamente alta a la luz de la totalidad de las circunstancias presentes en el caso de marras. Dicha parte no estaba exenta totalmente de justificación al litigar este caso, pues resultó ser que el señor Figueroa contribuyó a sus daños con su propia negligencia. Tampoco pudo éste establecer, como ya hemos señalado, una de las partidas de los daños reclamados.

## VI

Por los fundamentos antes expuestos, *se deja sin efecto la compensación concedida en concepto de lucro cesante y se devuelven al Tribunal de Primera Instancia los autos originales para la determinación de dicha partida, así como la de los ingresos realmente dejados de devengar por el demandante, a tenor con los pronunciamientos que aquí hemos hecho. Se modifica, además, la sentencia dictada por dicho tribunal para reducir a diez mil dólares ($10,000) la partida impuesta en concepto de honorarios de abogado y para aplicar la correspondiente deducción de mil dólares ($1,000) dispuesta en la Sec. 9(3)(b) de la Ley de de Protección Social por Accidentes de Automóviles, 9 L.P.R.A. sec.*

---

[9] *Velázquez Ortiz v. U.P.R.*, 128 D.P.R. 234 (1991); *Corpak, Art Printing v. Ramallo Brothers*, supra.

*2058(3)(b), a la partida concedida en concepto de lesiones corporales (daños físicos y mentales).*

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Fuster Berlingeri emitió una opinión de conformidad. El Juez Asociado Señor Negrón García no interviene.

(*Fdo.*) Isabel Llompart Zeno
*Secretaria del Tribunal Supremo*

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Fuster Berlingeri.

Estoy conforme con la sentencia emitida por el Tribunal en el caso de autos; pero creo conveniente ampliar brevemente lo resuelto en ella, sobre uno de los aspectos de la compensación por concepto de *lucro cesante*, para que se entienda sin equívocos lo que estamos determinando.

De los autos surge que aunque el demandante no podrá volverse a emplear en la misma ocupación de albañil que había tenido durante los últimos diez años de su vida, el accidente de tránsito que sufrió no lo dejó totalmente incapacitado para ejercer algún otro trabajo. El propio demandante admitió que después del accidente ha realizado otras tareas remunerables que no son las de albañil. En vista de lo anterior, es evidente que el foro de instancia no podía concederle al perjudicado una partida por lucro cesante fundamentada en la premisa de que éste no volvería a desempeñar empleo remunerado nunca más en su vida útil. Tal determinación era claramente contraria a los hechos del caso.

*Sin embargo, lo anterior no significa que el perjudicado no tenga ningún derecho a indemnización por concepto de lucro cesante, como alegan los recurrentes.* Es posible que

las limitadas tareas laborables que el demandante pueda desempeñar después del accidente no sean tan remunerables como las del oficio de albañil que tenía el demandante lesionado antes del accidente, en cuyo caso éste tiene derecho a alguna reparación, por razón de lucro cesante. Es decir, si las posibilidades de empleo futuro del demandante por causa del accidente son únicamente en trabajos de menor remuneración que los de albañil, *el demandante ha sufrido un daño indiscutible en cuanto a su habilidad para obtener ingresos, que debe compensarse como lucro cesante*. En efecto, reiteradamente hemos resuelto que el lucro cesante es un remedio para la *"disminución* o cese en los ingresos de una persona"* y que son reparables "la pérdida, total o *parcial* de su capacidad productiva". *Díaz v. Alcalá*, 140 D.P.R. 959, 972 (1996); *Sucn. Pacheco v. Eastern Med. Assoc., Inc.*, 135 D.P.R. 701 (1994); *Rodríguez v. Ponce Cement Corp.*, 98 D.P.R. 201 (1969).

En una ocasión anterior, tuvimos ante nos una situación muy parecida a la del caso de autos, en lo que aquí nos concierne. Allí se trataba de un carpintero que sufrió una incapacidad parcial permanente, como resultado de un accidente, que le impedía volver a desempeñar su anterior oficio. Después del accidente sólo podía trabajar de conserje. Estuvimos conforme entonces que el lucro cesante debía determinarse a base de la diferencia entre el ingreso que derivaba antes del accidente y el ingreso menor que había podido obtener después del accidente. *Velázquez v. Ponce Asphalt*, 113 D.P.R. 39 (1982).

A la luz de lo anterior, pues, no procede que se elimine *totalmente* la partida de lucro cesante que había otorgado el foro de instancia al demandante lesionado en el caso de autos. Como dicho foro llegó a la conclusión errada de que el demandante estaba incapacitado para ocupar cualquier otro trabajo, dicho foro no consideró la cuestión referida relativa a una disminución *parcial* de su capacidad productiva. Por lo tanto, procede que se devuelva el caso de

autos al foro de instancia para que se dilucide allí, con arreglo a la prueba correspondiente, si la indudable incapacidad del demandante para desempeñarse como albañil apareja una *reducción* en los ingresos que podrá generar durante el resto de su vida útil, en cuyo caso el foro de instancia debe conceder la partida correspondiente por concepto de lucro cesante.