Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| LAS FINQUERAS, CORP. <br><br> Apelada <br><br> V. <br><br> GLOBAL TREDING, INC. H/N/C GENERATORS, & MORE <br><br> Apelante | TA2026AP00127 <br><br><br> Consolidado con | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo <br><br> Caso Núm.: RG2025CV00111 <br><br> Sobre: Resolución de Contrato; Saneamiento por Defectos |
| LAS FINQUERAS, CORP. <br><br> Apelante <br><br> V. <br><br> GLOBAL TRENDING, INC. H/N/C GENERATORS, & MORE <br><br> Apelada | TA2026AP00137 | |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 26 de marzo de 2026.

El 8 de febrero de 2026, compareció ante este Tribunal de Apelaciones, Global Trending Inc. H/N/C Generators & More (en adelante, Global Trending), mediante un recurso de *Apelación Civil.*[1] Por medio de este, nos solicita la revisión de la *Sentencia* emitida el 9 de diciembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Fajardo. En virtud del aludido dictamen, el foro *a quo* declaró Ha Lugar la *Demanda* presentada por Las Finqueras, Corp. (en adelante, Las Finqueras) el 6 de marzo de 2025. En

---

[1] Este recurso está identificado con el alfanumérico TA2026AP00127.

consecuencia, ordenó a Global Trending a pagarle una suma ascendente a $34,495.00; $19,495.00 en virtud de un incumplimiento contractual, $10,000 en concepto de honorarios y $5,000 por concepto de gastos y costas.

Por su parte, el 9 de febrero de 2026, compareció Las Finqueras mediante un *Recurso de Apelación*.[2] De igual forma, solicitan que revisemos la *Sentencia* del 9 de diciembre de 2025. También solicitan la revisión de la *Orden* emitida el 9 de enero de 2026, la cual declaró No Ha Lugar una *Moción Solicitando Intereses Presentencia y Otra de Reconsideración*. A través del escrito antes mencionado, Las Finqueras solicitó al foro primario que le concedieran una partida por intereses presentencia y una indemnización en concepto de daños y perjuicios sufridos como consecuencia del incumplimiento contractual.

Por los fundamentos que adelante se exponen, se *modifica* la *Sentencia* a los fines de eliminar la partida de cinco mil dólares ($5,000) en concepto de costas y diez mil dólares ($10,000) en concepto de honorarios de abogados. Además, se le concede a Las Finqueras diez (10) días contados a partir de la notificación de esta sentencia, para presentar ante el Tribunal de Primera Instancia un memorándum de costas, de modo que pueda cumplirse con lo establecido en la Regla 44.1 de las Reglas de Procedimiento Civil. Así modificada, se confirma la *Sentencia*.

**I**

Los hechos que suscitaron la controversia de epígrafe tienen su lugar en una *Demanda* sobre resolución de contrato y saneamiento por defectos, instada por Las Finqueras en contra de Global Trending. A través de dicha demanda, Las Finqueras alegó haber adquirido de Global Trending un vehículo para usarlo en su

---

[2] Este recurso está identificado con el alfanumérico TA2026AP00137.

finca agrícola. Específicamente, se aduce en la *Demanda* que, el día en que el vehículo fue entregado, el mismo dejó de prender y que posteriormente, no pudo ser reparado, pese a los esfuerzos de diversos mecánicos.

Como parte de sus intentos de reparar el auto, se alega en la demanda que, el 20 de septiembre de 2024, Global Trending se lo llevó y permaneció en posesión del mismo. Luego, presuntamente, el 21 de octubre de 2024, Global Trending le comunicó a Las Finqueras que, entre otros asuntos, el vehículo no era uno diseñado para el uso que las Finqueras le habían dado y que los daños que este sufrió no estarían cubiertos por la garantía, ya que el auto se había excedido del millaje de la póliza. Posterior a esto, Las Finqueras exigió la devolución del dinero que pagaron, a lo cual Global Trending se negó. En virtud de la incapacidad de Global Trending de reparar el vehículo, su alegación de que el mismo no estaba cubierto por la garantía y su negativa de devolverle el dinero a Las Finqueras, se presentó la *Demanda* señalada.

Superado varios trámites procesales, innecesarios de pormenorizar, Global Trending presentó su *Contestación a Demanda* el 6 de junio de 2025. Subsiguientemente, Las Finqueras presentó una *Moción de Sentencia Sumaria Parcial* el 26 de noviembre de 2025, en la cual solicitó que se suspendiera el juicio en su fondo, por entender que no habían hechos materiales en controversia. Ese mismo día, radicó una *Moción de Suspensión de Vista en su fondo*. El 29 de noviembre de 2025, el foro *a quo* declaró ambas mociones No Ha Lugar.

Luego de culminado el descubrimiento de prueba, el foro primario celebró un *Juicio Plenario* el 3 de diciembre de 2025. El 9 de diciembre de 2025, el Tribunal de Primera Instancia emitió su *Sentencia*, objeto de los recursos ante nuestra consideración, en la que realizó treinta y siete (37) determinaciones de hechos y declaró

Con Lugar la *Demanda*. Citamos aquí aquellas determinaciones de hecho:

1. La Demandante Las Finqueras, Corp., es una corporación dedicada a la crianza y engorde de ganado bovino para la venta de carne con finca ubicada en Río Grande, Puerto Rico.

2. La parte demandante Las Finqueras, Corp está representada por su presidenta Brenda Ayala Sullivan y su vicepresidenta Rosely Hernández Hernández.

3. El Demandado Global Trending, Inc., haciendo negocios como Generators & More es una corporación dedicada al negocio de generadores eléctricos, sistemas solares, vehículos de motor, entre otros.

4. Durante el juicio en su fondo, la parte Demandada Globan [*sic*] Trending estuvo representada por su Gerente de Operaciones Felix G. Guardiola Rodríguez.

5. En o alrededor del 21 de noviembre de 2023, Rosely Hernández se comunicó con tienda de Generators & more en Plaza Carolina con el propósito de comparar un vehículo utilitario terrestre "UTV", por sus siglas en ingles. [*Exhibit 6 Parte Demandante*].

6. Ese día fue atendida por la vendedora Tays Borges Collazo.

7. Rosely Hernández se identificó como agricultora *Bonafine* e indicó que estaba buscando un terreno con ciertas especificaciones para el trabajo de la agricultura.

8. Indicó específicamente que necesitaba un vehículo para trabajar en una finca agrícola con motor fuerte para transportar equipo pesado, que incluía entre otras cosas, los novillos que nacían, dado que estos pesaban sobre 70 libras. De igual forma necesitaban un vehículo con winche o cable de remolque, dado que el terreno era húmedo y necesitaban el cable para desatorar el vehículo en caso de que se estancara.

9. El viernes **24 de noviembre de 2023** se completó la compraventa. Ese día el viernes negro o conocido comercialmente como "Black Friday". (Énfasis en original).

10. Como parte del proceso de compraventa, Rosely Hernández mostró su certificado de Agricultor Bonafinde. [*Exhibit 1 Parte Demandante*].

11. El vehículo vendido a la parte demandante era marca Massimo, modelo Warrior 1000 MXD. [*Exhibit 3 Parte Demandada*].

12. El precio de venta fue $19,495. [*Exhibit 2 Parte Demandada*].

13. La venta se llevó a cabo en la tienda del Demandado en Plaza Carolina, del Municipio de Carolina.

14. El referido vehículo fue comprado a nombre de la corporación Las Finqueras, Corp., con fondos federales conocidos como "Regrow" que fueron otorgados a la parte demandante por el Departamento de la Vivienda específicamente para la compra de un vehículo a ser utilizado en la industria agrícola.

15. El vehículo le fue entregado a la demandante el domingo **26 de noviembre de 2023** ya que se requería un permiso especial del centro comercial Plaza Carolina para sacar el vehículo por unas puertas especiales y estaban en la espera del marbete. (Énfasis en original).

16. El vehículo fue llevado directamente a la finca y fue utilizado por primera vez en la finca el **mismo día** que le fue entregado **26 de noviembre de 2023**. (Énfasis en original).

17. Ese mismo día se utilizó el vehículo por unas horas y éste se apagó y no volvió a prender.

18. Rosely Hernández llamó a la vendedora Tays Borges Collazo para explicarle la situación.

19. Por ser domingo, al día siguiente la vendedora hizo las gestiones correspondientes para atender la situación.

20. En la primera visita que hizo el técnico a la finca para tratar de arreglar el vehículo **no pudieron arreglarlo porque no encontraron el problema**. Incluso le cambiaron la batería por una nueva ya que creían que ese era el problema, pero aun así no funcionó. (Énfasis en original).

21. En otras tres ocasiones distintas, técnicos fueron a la finca a intentar arreglar el vehículo y o [*sic*] pudieron arreglarlo.

22. Por tal razón, el vehículo fue llevado por la parte demandada a su taller/almacén en el Municipio de Mayagüez.

23. Como parte del proceso de reparación en el taller de mecánica, le informaron a Rosely Hernández que el problema era la computadora del vehículo.

24. Según testificado por Rosely Hernández, en dicho taller de mecánica le cambiaron la computadora y le devolvieron el vehículo.

25. Según testificado por Rosely Hernández, como parte del proceso de cambio de computadora, no le entregaron ningún documento que acreditara las reparaciones que le hicieron al vehículo.

26. El vehículo continuó sin funcionar, por lo que el vehículo fue llevado por segunda ocasión al taller en Mayagüez.

27. El vehículo ha estado en posesión del Demandado desde el **20 de septiembre de 2024** hasta el presente. (Énfasis en original).

28. En un documento con fecha el **2 de octubre de 2024**, Massimo Brand denegó la garantía indicando el vehículo había pasado las 1,000 millas o el año de garantía cubierto. [***Exhibit 4 Parte Demandada***]. (Énfasis en original).

29. El **11 de octubre de 2024** la presidenta de Las Finqueras, Corp., Brenda Ayala Sullivan se comunicó con Generators & More solicitándole información sobre el vehículo y la evaluación realizada. (Énfasis en original).

30. El **21 de octubre de 2024** Generators & More remite carta a la Presidenta Brenda Ayala Sullivan informándole lo siguiente: [***Exhibit 5 Parte Demandante***]. (Énfasis en original).

    a. Que el vehículo Warrior 1000cc estaba diseñado para uso recreativo y no comercial. Que el uso agrícola que le habían dado hasta el momento al vehículo había provocado desgastes prematuros de los sistemas eléctricos y mecánicos,

    b. Que las situaciones y reparaciones que habían tenido lugar hasta el momento no habían sido provocadas por defectos de manufactura, sino por uso inadecuado de la unidad.

    c. Que el equipo no había sido protegido contra los "elementos" y presenta signos de una tenencia y custodia inadecuada. Que el vehículo se encontraba mojado y cubierto de barro y esto afectaba negativamente su funcionamiento.

    d. Que el vehículo tenía **1,632 horas de uso** lo que "implicaba" más de 1,000 millas recorridas. Que a manera de deferencia y buena fe le estarían cambiando el cable de gasolina y el de emergencia, los cuales se encontraban rotos a causa de la corrosión,

31. Por razones de seguridad, cerca de un mes después de comprado el vehículo, Rosely Hernández le colocó un sistema de posición global o "GPS" por sus siglas en inglés, con el propósito de saber siempre donde estaba el vehículo.

32. Al momento del vehículo ser llevado por segunda vez al taller en Mayagüez, el mismo tenía solamente **126.8 millas** corridas a base de la información recolectada por el "GPS" instalado. [***Exhibit 3 Parte Demandante***]. (Énfasis en original).

33. La parte demandante informó a la parte demandada que deseaba que le dieran un vehículo nuevo con las especificaciones que ella indicó o le devolvieran el dinero de la compraventa.

34. La parte demandada se negó a devolver el dinero debido a su política de no devolución de dinero. Así surge del recibo de compraventa. [***Exhibit 2 Parte Demandada***]

35. El vehículo ha estado en posesión del Demandado desde el **20 de septiembre de 2024** hasta el presente. (Énfasis en original).

36. Las demandantes solicitaron la devolución dinero o reemplazo de la unidad ya que el vehículo estaba en garantía por debajo de las mil (1,000) millas y no había transcurrido el año.

37. Según el testimonio de Rosely Hernández, DACO no atendió la consulta que se le realizó porque no se trataba de personas naturales, sino jurídicas, y esos asuntos tenían que atenderse en el Tribunal.

Con estos hechos, el foro *a quo* ordenó la devolución de los $19,495.00 que pagó Las Finqueras, más el pago de costas y honorarios. No contestes con esta determinación, el 29 de diciembre de 2025, Las Finqueras sometió una *Moción Solicitando Intereses Presentencia y otra de Reconsideración*, en virtud de la cual peticionó al foro primario que le concediera intereses presentencia y, a su vez, que le concediera una partida en concepto de daños sufridos a consecuencia del incumplimiento contractual. El 9 de enero de 2026, el foro *a quo* declaró dicha solicitud No Ha Lugar mediante una *Orden*.

Inconformes con la *Orden*, Las Finqueras presentó un *Recurso de Apelación* el 9 de febrero de 2026, donde esgrimió los siguientes señalamientos de error:

**Primer error**: Erró el TPI al no autorizar a la Apelante a recobrar intereses presentencia, pues la *Sentencia* halló que el Apelado fue temerario, y nuestro Tribunal Supremo ha resuelto que es "imperativa" la condena al pago de estos intereses cuando la parte perdi[do]sa actúa con temeridad.

**Segundo error**: Erró el TPI al denegar una partida razonable de daños y perjuicios, ya que las partidas reclamadas quedaron debidamente probadas, fueron materiales y no fueron especulativas.

Por su parte, el 8 de febrero de 2026, Global Trending radicó ante nos una *Apelación Civil*, donde afirmó que se cometieron los siguientes señalamientos de error:

**Primer error**: Erró el Tribunal de Primera Instancia al imponer la suma de cinco mil dólares ($5,000.00) por concepto de costas, en contravención a la Regla 44.1 de Procedimiento Civil, sin que conste en el expediente del caso la presentación de un memorando de costas dentro del término jurisdiccional dispuesto por dicha regla.

**Segundo error**: Erró el Tribunal de Primera Instancia al imponer honorarios de abogado por la suma de diez mil dólares ($10,000.00), cuantía que representa más del cincuenta por ciento (50%) del monto total de la sentencia, sin realizar determinaciones de hechos específicas que sustenten una conducta temeraria o frívola por la parte del apelante, y en contravención al carácter sancionatorio excepcional de dicha figura conforme a lo resuelto por el Tribunal Supremo en *Corpak, Art Printing v. Ramallo Brothers*, 125 D.P.R. 724, 738 (1990), cuando el apelante intentó lograr un acuerdo, además de reparar el vehículo.

El 17 de febrero de 2026, este Tribunal de Apelaciones emitió una *Resolución*, ordenando la consolidación del caso TA2026AP00127 con el TA2026AP00137, y disponiendo los términos correspondientes. Transcurrido varios trámites procesales, el 9 de marzo de 2026, Las Finqueras presentó su *Oposición a Recurso de Apelación*, mientras que Global Trending sometió su *Oposición a Apelación Civil* el 10 de marzo de 2026.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A. Costas

Según es sabido, la concesión de costas está regida por lo provisto en la Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1. *Maderas Tratadas v. Sun Alliance, et al.*, 185 DPR 880, 934 (2012); *ELA v. El Ojo de Agua Development*, 205 DPR 502, 527 (2020). En lo pertinente, establece lo siguiente:

> *(a)  Su concesión.* Las costas se concederán a la parte cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos en que se incurra necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra.

> *(b)  Cómo se concederán.* La parte que reclame el pago de costas presentará al Tribunal y notificará a la parte contraria, dentro del término de diez (10) días contados a partir del archivo en autos de copia de la notificación de la sentencia una relación o memorándum de todas las partidas de gastos y desembolsos necesarios en que se incurrió durante la tramitación del pleito o procedimiento. ...

La precitada disposición tiene una función reparadora, pues permite resarcir a la parte prevaleciente en el pleito por medio del reembolso de los gastos necesarios y razonables en los que tuvo que incurrir para que su teoría prevaleciera. *Maderas Tratadas v. Sun Alliance, et al.*, supra, pág. 934; *ELA v. El Ojo de Agua Development*, supra, pág. 527; *Rosario Domínguez v. ELA*, 198 DPR 197, 211 (2020). Nuestra Máxima Curia ha dispuesto que, una vez la parte prevaleciente reclama su pago, la imposición de costas a la parte perdidosa es mandatoria. *Rosario Domínguez v. ELA*, supra, en la pág. 212.

No obstante, lo anterior no implica que el pago de las costas es automático, puesto que es necesario que la parte prevaleciente cumpla con el procedimiento dispuesto en la Regla 44.1 (b) de Procedimiento Civil, *supra.  Íd.*; *ELA v. El Ojo de Agua Development*,

supra, en la pág. 528. **Además, se debe presentar oportunamente un memorando de costas en el que se precisen los gastos incurridos**. *Rosario Domínguez v. ELA,* supra, pág. 212. Una vez sometido oportunamente a la consideración del tribunal, estos tienen amplia discreción para evaluar la razonabilidad y determinar la necesidad de los gastos detallados. *Maderas Tratadas v. Sun Alliance, et al.*, supra, pág. 935.

Cónsono con lo anterior, el Tribunal Supremo ha reiterado que el término de diez días para presentar el memorando de costas es jurisdiccional. *Íd.*, en la pág. 213. Por ende, el incumplimiento, o el cumplimiento tardío con esta regla, priva al tribunal de la autoridad para atender y conceder las costas. *Íd.*

### B. Honorarios de Abogado

La concesión de honorarios de abogado está regulada por la Regla 44.1 (d) de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 44.1 (d). La misma autoriza al Tribunal a imponer honorarios de abogado cuando una parte o su abogado procede con temeridad o frivolidad. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163, 192 (2022).

De esta manera, la imposición o concesión de honorarios de abogado no procede en todos los casos. Depende, pues, de la determinación discrecional que haga el tribunal en torno a si la parte perdidosa o su abogado, actuaron con temeridad o frivolidad, o de la existencia de una ley especial que ordene la imposición de los honorarios. *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 148-149 (2022); *Ortiz Valle v. Panadería Ricomini,* 210 DPR 831, 839-840 (2022) (caso bajo la Ley 100-1959, la cual ordena el pago de honorarios). Nuestro Alto Foro ha puntualizado que: "[s]in duda, para reclamar honorarios de abogado y los intereses presentencia *es imprescindible* que se haya actuado con temeridad durante el

trámite judicial". *SLG González-Figueroa v. SLG et al.*, supra, pág. 148 (énfasis suplido).

La *temeridad* se define como aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables. *Íd.*; *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Sobre este particular, nuestro más Alto Foro ha expresado también que "[l]a temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia". *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001) citando a *Elba A.B.M. v. U.P.R.*, 125 PR 294, 329 (1990).

En *Feliciano Polanco v. Feliciano González,* 147 DPR 722, 730 (1999), el Tribunal Supremo de Puerto Rico estableció unos ejemplos de conducta temeraria, la cual incluye:

> [C]uando el demandado contesta la demanda y niega su responsabilidad total, aunque la acepte posteriormente; cuando se defiende injustificadamente de la acción que se presenta en su contra; cuando no admite francamente su responsabilidad limitada o parcial, a pesar de creer que la única razón que tiene para oponerse a la demanda es que la cuantía es exagerada; cuando se arriesga a litigar un caso del que prima facie se desprende su negligencia; o cuando niega un hecho que le consta ser cierto.

El propósito de la imposición de honorarios de abogado en casos de temeridad es "establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito". *Andamios de PR v. Newport Bonding*, 179 DPR 503, 520 (2010); *Pérez Rodríguez v. López Rodríguez et al.*, supra, pág. 193; *SLG González-Figueroa v. SLG et al.*, supra, págs. 148-149.

Además, la imposición de honorarios de abogado tiene como objetivo disuadir la litigación innecesaria y alentar las transacciones mediante la imposición de sanciones a la parte temeraria para compensar los perjuicios económicos y las molestias sufridas por la otra parte. *Íd.* págs. 718-719. Nuestro más Alto Foro ha dispuesto que, la facultad de imponer honorarios de abogados es "la mejor arma que ostentan los tribunales para gestionar de forma eficaz los procedimientos judiciales y el tiempo de la administración de la justicia, así como para proteger a los litigantes de la dilación y los gastos innecesarios". *SLG González-Figueroa v. SLG et al.*, supra, pág. 149.

La determinación sobre si una parte ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador y no será variada en apelación a menos que se demuestre que este ha abusado de su discreción. *Pérez Rodríguez v. López Rodríguez et al.*, supra, pág. 193; *SLG González-Figueroa v. SLG et al.*, supra, pág. 150. Tampoco será variada la partida concedida a menos que resulte ser excesiva, exigua o constituya un abuso de discreción. *Feliciano Polanco v. Feliciano González*, supra, en las págs. 729.

Ahora bien, una vez el tribunal determina que se incurrió en temeridad, está obligado a imponer el pago de los honorarios de abogado a favor de la parte que prevaleció en el pleito. *PR Fast Ferries et al. v. AAPP*, 213 DPR 103, 115 (2023). No obstante, el tribunal no está obligado a realizar la determinación de temeridad en términos expresos. *SLG González-Figueroa v. SLG et al.*, supra, en la pág. 148, citando a *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702-703 (1999). El Alto Foro ha resuelto que: "[e]n ausencia de una conclusión expresa a esos efectos, **un pronunciamiento en la sentencia condenando al pago de honorarios de abogado, implica que el tribunal sentenciador consideró temeraria a la**

**parte así condenada**". (Énfasis suplido). Ver también *Siaca v. Bahía Beach Resort*, 194 DPR 559, 589, esc. 75 (2016); *Ramos v. Moure et al.,* 150 DPR 685, 691, esc. 9 (2000).[3]

### C. *Interés presentencia*

La Regla 44.3 de Procedimiento Civil, 32 LPRA Ap. V, R.44.3, reconoce la procedencia de los intereses presentencia o intereses por temeridad. Dicho estatuto dispone, en parte, que:

> (b) El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo que haya fijado la Junta en virtud del inciso (a) de esta regla y que esté en vigor al momento de dictarse la sentencia **desde que haya surgido la causa de acción en todo caso de cobro de dinero** y **desde la presentación de la demanda, en caso de daños y perjuicios**, y hasta la fecha en que se dicte sentencia a computarse sobre la cuantía de la sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, dependencias o funcionarios o funcionarias en su carácter oficial. El tipo de interés se hará constar en la sentencia. (Énfasis suplido).

Según se desprende de la Regla, los tribunales están facultados a imponer interés presentencia en casos de daños y perjuicios y cobro de dinero, donde haya, a su vez, mediado temeridad. Esto, a diferencia de los honorarios de abogados, los cuales proceden de manera independiente a la causa de acción presentada. *SLG González-Figueroa v. SLG et al.*, supra, en las págs. 147-148. El Supremo ha establecido que, una vez haya una determinación de temeridad, la imposición de interés presentencia es imperativa. *Íd.*, en las págs. 142, 153.

### D. *Reglas 19 y 76 del Tribunal de Apelaciones y la apreciación de la prueba*

Dispone la Regla 19 del Tribunal de Apelaciones que: "(A) Cuando la parte apelante haya señalado algún error relacionado con

---

[3] En el caso de *Ramos*, el Alto Foro expresó, con respecto a uno de los señalamientos ante su consideración, que: "[e]ste tercer error carece de mérito ya que **reiteradamente hemos resuelto que el tribunal puede imponer honorarios sin la necesidad de mencionar expresamente la existencia de temeridad**. Basta con imponer honorarios para determinar temeridad". (Énfasis suplido).

la suficiencia de la prueba testifical o con la apreciación errónea de esta por parte del tribunal apelado, **deberá reproducir la prueba oral, de conformidad con lo dispuesto en la Regla 76 de este Reglamento**" (Énfasis suplido).[4] La mencionada Regla 76 establece los medios disponibles para reproducir la prueba.[5]

El Tribunal Supremo ha pautado que "cuando un peticionario señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo **requiere** que este ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario utilizando alguno de los mecanismos de recopilación de prueba oral". *Pueblo v. Pérez Delgado*, 211 DPR 654, 671 (2023) (Énfasis suplido). Ver también *Pueblo v. Valentín Rivera*, 197 DPR 636, 640 (2017). Por ende, es responsabilidad del peticionario presentar la prueba oral bajo la cual se quiere impugnar una determinación de un foro primario. Pérez Delgado, *supra*, en la pág. 672. Esta obligación nace como corolario de la presunción de corrección que acompaña las determinaciones del foro *a quo*. *Íd.*

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a resolver.

**III**

**A**

En primer orden, discutimos lo correspondiente al recurso con designación alfanumérica TA2026AP00127. Por medio de este, Global Trending esgrime dos (2) señalamientos de error.

En su primer señalamiento de error, Global Trending aduce que erró el foro *a quo* al ordenar el pago de cinco mil dólares ($5,000) en costas sin que constara en el expediente un memorándum de

---

[4] Regla 19 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas.* Reglamento TA, 2025 TSPR 42, pág. 37, 215 DPR __ (2025).
[5] La prueba puede reproducirse por medio de: (a) regrabación de la prueba oral, (b) una transcripción y (c) una exposición narrativa estipulada. Regla 76 del Reglamento del Tribunal de Apelaciones, *supra*.

costas, conforme a lo dispuesto en la Regla 44.1 (d) de las Reglas de Procedimiento Civil, *supra*. Le asiste la razón.

Tras examinar el expediente, no identificamos que Las Finqueras haya cumplido con su deber bajo la Regla 44.1 (d). Por otro lado, el foro primario concedió, como parte de su *Sentencia*, el pago de costas de litigio, obviando el procedimiento pautado en las Reglas de Procedimiento Civil. Las mismas son claras en cuanto a que las costas se concederán *luego* de que la parte presentare un memorándum de todos sus gastos, *y tras* haberle concedido oportunidad de objetar dicho memorándum a la parte perdidosa. Regla 44.1 de las Reglas de Procedimiento Civil, *supra*.

Al emitir la orden del pago sin haberse realizado el procedimiento adecuado, el foro primario privó a Global Trending de su derecho a objetar las costas del litigio. A su vez, dicho proceder impidió que el foro primario pudiera evaluar cuales fueron los gastos necesarios incurridos por Las Finqueras, conforme a la jurisprudencia sobre el particular, lo cual le permitiría otorgar una cuantía justa. En ausencia del memorándum, el foro primario no estaba en posición para conceder las costas del litigio. Por todo lo anterior, razonamos que se cometió el primer error.

En su segundo señalamiento de error, Global Trending sostiene que erró el foro primario al imponerle una suma de diez mil dólares ($10,000) en concepto de honorarios, dado a que dicha cuantía era excesiva y contraria a los propósitos de la sanción. A su vez, alega que erró el foro *a quo* al imponer honorarios sin que hubiera realizado determinaciones de hechos específicas de conducta temeraria o frívola. Coincidimos con este.

Como reseñamos anteriormente, la norma es clara en cuanto a que un tribunal no tiene que hacer una conclusión expresa de temeridad en su sentencia para poder imponer honorarios de abogados. Sobre ese particular, no tiene razón Global Trending

respecto a su argumento de que erró el foro primario al no hacer determinaciones específicas de cómo se incurrió en temeridad.

No obstante, la jurisprudencia es igualmente clara a los efectos de exigir que una determinación de temeridad sea realizada a base de la conducta disruptiva de la parte sancionada. No podemos olvidar que los honorarios persiguen castigar conducta que atrasa los procedimientos, y que para estas se puedan imponer, es **imprescindible que se haya actuado con temeridad**. *SLG González-Figueroa v. SLG et al.*, supra, pág. 148.

A pesar de que la determinación sobre si una parte ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador, en el caso de epígrafe, no surge del expediente, de forma alguna, justificación para la imposición de honorarios. Si bien es cierto que la determinación de temeridad del foro primario no tiene que realizarse en términos expresos, dicha conclusión debe fundamentarse en el expediente. Es requisito, para la imposición de honorarios, que la parte sancionada haya actuado con temeridad. En ausencia de prueba o indicios de que se haya procedido de forma temeraria, el foro primario no estaba facultado para imponer el pago de honorarios. Por lo anterior, colegimos que el foro primario abusó de su discreción al imponer la sanción de honorarios. En virtud de lo expuesto, se cometió el segundo error.

**B**

Resuelto lo anterior, corresponde examinar lo pertinente al recurso con identificación alfanumérica TA2026AP00137. A través de este, Las Finqueras adujo dos señalamientos de error.

En su primer señalamiento de error, Las Finqueras sostiene que erró el foro primario al no ordenar el pago de los intereses presentencia. No les asiste la razón.

Como señalamos anteriormente, el pago de intereses presentencia procede únicamente cuando se presentan pleitos al amparo de una de las siguientes dos causas de acción: (1) cobro de dinero y (2) pleitos de daños y perjuicios. Es precisamente esa la diferencia entre la sanción de los honorarios—la cual aplica en todo tipo de caso—y la sanción de intereses presentencia.

Habiendo examinado las alegaciones de la demanda, surge que la causa de acción presentada al foro primario no era de daños y perjuicios, ni tampoco era de cobro de dinero. Al contrario, la reclamación de Las Finqueras era una de resolución de contrato y saneamiento. Por ello, no era aplicable la disposición en cuanto a los intereses presentencia. Por lo anterior, no se cometió el primer error.

En su segundo señalamiento de error, Las Finqueras aduce que el foro primario erró al no concederles una partida en concepto de daños y perjuicios, los cuales alegan fueron debidamente probados. No obstante, Las Finqueras no nos puso en posición para revocar la determinación del foro primario.

Como es sabido, al impugnar la apreciación de la prueba del foro *a quo,* el apelante carga con la responsabilidad de presentar ante el foro apelativo la prueba desfilada, mediante uno de los mecanismos que dispone la Regla 76 del Reglamento del Tribunal de Apelaciones, *supra.* En este caso, dicha carga recaía sobre Las Finqueras, quien no presentó la transcripción de la prueba oral ante esta Curia. Cónsono con lo antes indicado, y no estando en posición para revisar las determinaciones del foro primario, somos del criterio de que no se cometió el segundo error.

**IV**

En virtud de todo lo anterior, corresponde modificar la *Sentencia,* a los fines de eliminar la partida de cinco mil dólares ($5,000) en concepto de costas y diez mil dólares ($10,000) en

concepto de honorarios de abogados. Además, se le concede a Las Finqueras diez (10) días contados a partir de la notificación de esta sentencia, para presentar ante el Tribunal de Primera Instancia un memorándum de costas, de modo que pueda cumplirse con lo establecido en la Regla 44.1 de las Reglas de Procedimiento Civil. Así modificada, se confirma la *Sentencia.*

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones